BUD ARTHUR FINCH, by his next friend, MARIE
A. FINCH, and MARIE A .FINCH,
*Plaintiffs and Appellants,*

vs.

WILLIAM T. CANADAY, doing business as THE
PLATTE MOTOR COMPANY,
*Defendant and Respondent.*

(No. 2716; May 22nd, 1956; 297 Pac. (2d) 594)

474

For the plaintiffs and appellants the cause was submitted upon the brief of Spence & Hill of Riverton, Wyoming; oral argument by Mr. G. L. Spence.

For the defendant and respondent the cause was submitted upon the brief of Murane & Bostwick of Casper, Wyoming; oral argument by Mr. Edward E. Murane.

476

## OPINION

HARNSBERGER, Justice.

This is an appeal by Marie A. Finch in her own right and as the next friend of her son, Bud Arthur Finch, from an adverse judgment of the district court, rendered in an action in which appellants sought damages for the personal injuries sustained by Bud Arthur Finch in an automobile accident alleged to have been caused by a defect in the vehicle in which the injured boy was riding and which was owned by defendant, and by him negligently loaned and entrusted to an incompetent driver who was operating the car at the time of the accident.

It appears the vehicle in which the plaintiff was riding was owned by the defendant and the defendant's salesman had turned the car over to a fifteen-year-old boy who was driving the automobile at the time of the accident for a tryout before purchase, without inquiring if the boy had a driver's license or making other investigation concerning his competency to operate

the motor vehicle. Instead of driving around the block, as was intended by the salesman, the boy drove through the town of Douglas and onto the state highway, where he proceeded to drive at a speed of at least 85 miles and possibly as high as 90 miles an hour. While driving at this excessive and unlawful speed, he attempted to go around and pass another car traveling in the same direction and when he saw a third car approaching from the opposite direction, he applied brakes and swerved to the left, trying to avoid a collision. This caused the vehicle to leave the road, overturn and roll over a number of times, in which accident the plaintiff suffered serious injuries.

Prior to the acquisition of the car by the defendant, the bolt which fastened one end of the rear "sway bar" to a bracket on the car's body, had come out and repair was made by replacing the original bolt with a stove bolt. There was also some evidence that one side of the bracket was cracked. Further repair was not made before the car was entrusted to the driver by the salesman and appellant claims that due to the inadequacy of the bolt used in fastening the "sway bar" to the bracket and due to the cracked condition of the bracket itself, there resulted so much "play" and lateral movement of the car's body that when brakes were suddenly applied at high speed, the sharp swerve of the car caused the bracket to break and make the car go out of control and roll over, and therefore the defective condition of the bolt and bracket was at least a contributing cause of the accident. However, the evidence with respect to this point was conflicting, and there was ample evidence to support the trial court's finding that the accident was not caused or contributed to by the breaking of the bracket, so we must accept the court's judgment in the matter.

Quite properly the appellant does not contend that the driver's failure to have a driver's license, rendered the defendant liable. Appellant does contend that it was the duty of the salesman to inquire of the driver as to whether he had a driver's license or to make other investigation as to the driver's competency to operate the car before it was entrusted to him. The appellant insists that this failure on the part of the salesman constituted negligence, which rendered his employer, the defendant, liable for the injuries sustained by the plaintiff.

Certain of the laws of this state, which were applicable at the time of the accident, provided that, with certain exceptions with which we are not concerned, it was unlawful for any person to drive a motor vehicle along or on any public highway, road, or street in this state unless such person has been issued a license by the Wyoming State Highway Department (§ 60-1603, Wyoming Compiled Statutes, 1945, Supp.) ; that the application of a minor fifteen years of age or older, for a driver's license, must be signed by both parents or in some cases by other persons (§ 60-1608, W.C.S., 1945, Supp.) thus indicating the eligibility of fifteen-year-olds to obtain driver's licenses, and § 9, Ch. 162, S.L. of Wyoming, 1947, made provision for examination of the applicant for license, wherein it is set forth, "Such examination shall include a test of the applicant's eyesight, his ability to understand highway signs regulating warning and directing traffic, his knowledge of the traffic regulations of the State and shall include an actual demonstration of ability to exercise ordinary and reasonable control in the operation of a motor vehicle."

The appellant relies heavily on Anderson v. Driverless Cars, 11 La. App. 515, 124 So. 312. This case is

cited in 60 C.J.S. 1059, 1060, nn. 98, 99, in support of the text statement that "An owner lending or renting his car has, therefore, been required to make a reasonable investigation to determine whether or not the borrower or renter is an ordinarily competent operator, or, in lieu of his own investigation, and in the absence of actual knowledge of incompetency, he may accept the certificate or license issued by the public authorities that the person presenting it is competent * * * ." Appellant says this case is principally outstanding and recognized by our writers for the language used in the opinion.

We do not necessarily express disagreement with the Louisiana Court when we say that we do not accept counsel's view that the decision requires that an investigation should extend beyond that which appears necessary under all the surrounding circumstances. The flat statement appearing in the decision that an owner "must make reasonable investigation to determine whether or not the borrower or renter is an ordinarily competent operator," must be considered in the light of other statements and facts appearing in the same opinion. The court comments on its former holding in Baader v. Driverless Cars, 10 La. App. 310, 120 So. 515, 517, where, having found the renter was intoxicated at the time the rental was made from the fact that he was intoxicated almost immediately afterwards, the court held the owner liable for damages resulting from the renter's negligent driving, and then made the further statement that, "the failure to inquire whether a prospective customer had complied with a city ordinance designed for the protection of the public, and to secure its safety upon the public streets, is persuasive of carelessness or at least indifference to salutary municipal regulations in the public interest and affecting the very

business carried on by defendant." However, the opinion in Anderson v. Driverless Cars, supra at 313, continues to say "we did not intend that holding to establish the doctrine that the failure to exact the production of a driver's license ipso facto renders the lessor or the lender of the car liable in a civil suit. On the contrary the law seems to be well settled, as stated by Berry on Automobiles (6th Ed.) § 227: 'While the failure of a person to perform a duty imposed upon him by statute or ordinance is sufficient evidence of negligence on his part, nevertheless, such neglect, however illegal, in the absence of evidence showing it to have been a proximate cause of the injury complained of, furnishes no legal ground for complaint.' " Thereupon, finding the failure to have a license was not a proximate cause of the accident which had resulted from the careless driving of the bailee, the court held the owner was not liable. The court's further statement (p. 313) that "the lender or the lessor of automobiles may relieve himself from possible subsequent liability by making a reasonable investigation as to the competency of the driver, or by accepting, in lieu of his own investigation and in the absence of actual knowledge of incompetency, the certificate issued by the city authorities that the person presenting it is competent" falls far short of holding that as a matter of law the lender or lessor *must* either require the production of such a certificate or *must* make investigation, beyond that which all the present circumstances seem to require, under pain of being held liable for damage or injury resulting from careless operation of the motor vehicle by the bailee.

Seemingly the appellant also reasons from the Anderson case, supra, that the lender of a motor vehicle who is without actual knowledge that a person is *competent* must either require the production of a driver's

license or make some type of investigation tending to establish that the prospective bailee is competent. There is no basis for this conclusion, as the opinion only says that unless there is actual knowledge that the prospective bailee is *incompetent,* the production of a driver's license is reasonable evidence of his competency and may excuse the lender from further investigation. Tacit recognition, however, is given that the question of competency is one of fact, rather than one of law determined by having or not having of a driver's license. Furthermore, although it appears to be the appellant's theory that as a matter of law, the failure to inquire concerning a driver's license, was negligence, at one point in the appellant's brief it is said, "the duty to inquire as to the competency of the driver resolves itself in each case as a special particular factual matter for the jury or trier of facts to determine," thus rendering appellant's position somewhat inconsistent.

The text of 5 Blashfield, Cyclopedia of Automobile Law (1954) § 2915, p. 104, cites 31 states which give support to the following statement:

"As a general rule, therefore, in the absence of any statute imposing liability the owner of a motor vehicle is not liable for injuries to a stranger occurring from the negligent use of the machine by one to whom the machine has been loaned or hired * * *."

On the following pages 105, 109, of the same section, it is also stated:

"* * * the fact that bailed property is an automobile not changing the general rule that the bailor is not liable to third persons for the bailee's negligent use of the thing bailed."

In continuing the discussion of the matter, it is said in § 2924, pp. 137, 138, 140:

"In such case the owner is liable for the driver's negligence in the operation of the machine, if he knows, at the time he so intrusts it to him, of the driver's character and habits, with respect to operating automobiles or of his incompetency, or if he should know such driver to be reckless or incompetent * * *."

We do not question the rule which has been so frequently announced, that the bailor under such circumstances is liable if he knows or should know of the incompentency of the bailee. See Saunders v. Prue, 235 Mo. App. 1245, 151 S.W.2d 478; Weatherman v. Ramsey, 207 N.C. 270, 176 S.E. 568; Jones v. Harris, 122 Wash. 69, 210 P. 22; Annotation, 36 A.L.R., 1137, 1148; Annotation, 100 A.L.R., 920, 923; Williamson v. Eclipse Motor Lines, 145 Ohio St. 467, 62 N.E.2d 339, 168 A.L.R. 1356, Annot., 168 A.L.R. 1364. The record does not show and the appellant does not contend the salesman had actual knowledge that the driver was not a competent person to drive the automobile, so the single question to resolve is whether or not from all the facts or circumstances the salesman is charged with knowledge that the young man was incompetent driver.

With respect to what, if any, duty rests upon a dealer to inquire whether or not the person entrusted with a motor vehicle is possessed of a driver's license, we turn again to 5 Blashfield, Cyclopedia of Automobile Law (1954) § 2925, p. 144, where it is said:

"The fact that an owner permits an unlicensed person to drive his automobile will not subject the owner to liability on the theory that he has permitted the use of the car by an unskilled operator * * *."

Quoting in its support cases from Connecticut, Colorado, and Delaware, as well as from other Ohio deci-

sions, the court in Gulla v. Straus, 154 Ohio St. 193, 93 N.E.2d 662, 664, said:

"By the great weight of authority, the mere fact that the operator of a motor vehicle was not licensed to operate it as required by statute will not of itself make the owner liable for injury caused by the operation of the vehicle * * * ."

If, as we believe, these are correct statements of the law, then there is no such duty.

The last mentioned opinion went even farther and said at page 665:

"* * * it will be presumed that Reynolds (the driver) would have been granted a driver's license if he had applied for one. * * * the fact that he did not possess one had no operative effect to create liability against the defendant."

And the Ohio court also observed (p. 666) that:

"* * * where the incompetency of the entrustee is not *apparent* to the entruster of the motor vehicle at the time of its entrustment, it must be affirmatively shown that the entruster had at that time knowledge of such facts and circumstances relating to the incompetency of the entrustee to operate the motor vehicle as would charge the entruster with knowledge of such incompetency. Coins v. Washington Motor Coach Co., Inc., 34 Wash.2d 1, 208 P.2d 243; McIlroy v. Akers Motor Lines, Inc., 229 N.C. 509, 50 S.E. 2d 530." (Emphasis supplied.)

In 60 C.J.S. 1061, it is said:

"The injurious and negligent conduct of the driver *resulting from his incompetency* is a necessary factor in the libaility of the owner; if an accident occurs in which the driver is not negligent, there is no causal connection between the owner's act of intrusting his

car to an incompetent driver and the injury." (Emphasis supplied.)

We purposely emphasize a portion of this statement to indicate our agreement that the alleged negligence in this case must result from the driver's *incompetency*. However, the same paragraph of the quoted text at page 1061 continues:

"So, it has also been held that, in order for the owner to be liable under this rule, the injury must proximately result from the driver's incompetence *or recklessness* and that the owner is liable for all such injuries as are the natural and probable consequences of the incompetency or *recklessness* of the driver while using the motor vehicle."

(Emphasis supplied.)

We realize this text represents a composite of several statements appearing in the authorities cited thereunder, but by their being coupled together, they do breed some confusion. Conceding that a bailor owes a duty not to place an inherently dangerous or even a potentially dangerous instrumentality in the possession, control or use of one whom the bailor either knows or ought to know is incompetent to have that possession, control or use, the bailor, notwithstanding, remains free from all liability unless it is shown that damage or injury resulted from an incompetency of the bailee which was actually known to the bailor or which, as a matter of law, should have been known to him under all the facts and circumstances surrounding the bailment.

If the propensity of the bailee for recklessness in the possession, control or use of the subject of bailment or its counterpart be known, or, under all the circumstances, should be known to the bailor, that

knowledge of the bailee's recklessness amounts to knowledge of his incompetency, just as certainly as would be the knowledge that the bailee was handicapped by physical disabilities which made it impossible for him to properly possess, control or use the same. So it is, that the actual knowledge of a driver's characteristic recklessness, may make the owner liable for the reckless negligent act of the driver to whom he entrusts a motor vehicle for trial. However, in the absence of actual knowledge that the individual is a reckless driver and consequently an incompetent driver, the legal duty of the owner who entrusts a motor vehicle to him must be measured by what he knows or what became apparent to him, or, by what would have reasonably become apparent to an ordinary person under the same circumstances.

Incompetency to operate a motor vehicle may result from divers causes and for many different reasons. Thus, one may be incompetent through physical infirmity, such as total and, in some instances, partial loss of vision, loss of hearing, hands, arms, legs, or a combination of such losses, at least, where there are no supplemental appliances which sufficiently overcome the handicap. There are also muscular and nervous afflictions which destroy control of physical action, and there are losses or disturbances of mental or other faculties which render persons unable to drive automobiles. The determination of whether these disabilities incapacitate is frequently left to licensing authorities.

Incompetency may, however, be the result of a person's disposition or proclivities. One may have such a disregard for law observance or indifference to the rights and safety of others, as well as for his own, as to constitute his operation of an automobile a menace

and a hazard to all who make use of our highways. This is true even though he may qualify for and receive a license to operate such a vehicle. Until their recklessness or wanton disposition is demonstrated by past performance, this trait, making them incompetent as drivers, remains unknown. In consequence, we find many individuals in possession of all their mental and physical faculties, who are thoroughly conversant with all of the rules of the roads and the laws regulating the use and operation of motor vehicles and whose past performances are free from accident or from any criticism, and who are, therefore, considered to be wholly competent persons with whom to entrust an automobile, yet who are in fact dangerous, unreliable and completely incompetent drivers. All the investigation in the world may not disclose that type of incompetency. A driver's license does not serve to make such an individual a competent driver any more than knowledge that he was without a driver's license would make him incompetent. If a person is of an age sufficient to secure a driver's license, all else that is required to enable him to obtain one is that he have proper consent of parents or guardian; that he know the traffic laws of this state and demonstrate he can physically operate the vehicle. There is no showing in the record that the driver in this case could not have obtained the necessary consent; that he did not have sufficient knowledge of those traffic laws or that he did not have ample ability to satisfactorily operate the automobile. The opposite is, at least, substantially demonstrated by the fact that he did successfully operate the automobile in driving through town traffic on his way to the highway. There was absolutely nothing apparent to apprise the owner's salesman that the driver was of a disposition to violate the law and to drive so carelessly and recklessly as to

endanger the lives of himself, those other lads riding with him in the car, and all others who were upon the highway over the route he traveled. The burden was upon the plaintiff to produce evidence that, under all the circumstances present when the automobile was placed in possession of the driver who wrecked the car, the salesman either knew or had reason to know that the young man was of a wantonly careless disposition and completely without regard for the welfare of others. We find nothing in the evidence which shows there was any fact or circumstance apparent or occurring to warn or apprise the salesman that the driver who wrecked the car was other than a person competent to operate the same. See Brown v. Fields, 160 Or. 23, 83 P.2d 144, 146, where it was said, "Unless there are facts and circumstances which might reasonably put the dealer on inquiry, he is not obliged to test the competency and skill of his customer before entrusting him with an instrumentality which, even though it may become highly dangerous by reason of its improper use and operation, is not inherently dangerous."

On the contrary, the evidence showed the driver was man-sized, of good appearance, and employed in a man's work—all presumptive of his possessing the ability and usual qualifications necessary to operate a motor vehicle. It also showed him to be capable of driving the car in the town's traffic and upon the highway. It was not his incompetency to operate the car which caused the accident. It was his recklessness, his carelessness, and his willful disregard of the law and of the rights of others, which caused the accident. These were elements of incompetency which were not discoverable by any inquiry or by the production of a license or by its lack. They lay hidden in the mind and in the disposition and character of the driver.

These are areas wherein a reasonable person is not charged at his peril to explore.

The recklessness which caused this accident was driving at excessive and unlawful speed. We take notice that such fast driving is a major cause of similar accidents. Excessive speed is not such an incompetent recklessness as is peculiar to youth or to inexperience in driving or to physical incapacity. Literally millions of adults, as well as normally well-developed fifteen-year-old boys and girls, even those with driver's licenses indulge in this abuse of the use of our highways.

The repeated reference made to the youth of the driver and counsel's stressing the fact that the actual age of the driver was fifteen years, suggest that it is plaintiff's contention that young age alone establishes incompetence. In Union Bank of Chicago v. Kalkhurst, 265 Ill. App. 254, 260, the court said "Nor can we agree that the age of (the driver) alone is sufficient evidence of incompetence," citing other authorities. With this we are in accord. It would be a harsh rule if every dealer in those myriad commodities which, while not inherently dangerous are potentially dangerous if misused, were required to ascertain if an apparently competent prospective purchaser was of a disposition to make improper use of such article before entrusting them to customers for trial. Yet this is subtantially the rule which will be implanted in the law of negligence if we are to hold that the salesman in this case neglected his legal duty.

Counsel for the respondent make reference to an excerpt taken from Sare v. Stetz, 67 Wyo. 55, 71, 214 P.2d 486, 492, where we quoted from The New York

Court of Appeals in Van Blaricom v. Dodgson, 220 N.Y. 111, 115 N.E. 443, 444, L.R.A. 1917F, 363:

" 'If, contrary to ordinary rules, the owner of a car ought to be responsible for the carelessness of every one whom he permits to use it * * * that liability ought to be sought by legislation as a condition of issuing a license * * *.' "

We are also of the same opinion and believe that if the law of negligence is to be expanded by requiring an owner-bailor or vendor to ascertain that a prospective bailee or vendee will not misuse a potentially dangerous chattel and make its use dangerous to the public, or else be held liable for any damage or injury which is inflicted, this should be done, it at all, by legislative act rather than by judicial decision.

The ultimate in this matter is, whether under all the facts and circumstances surrounding the transaction, the owner's salesman was negligent in placing the car with the driver for its trial. This was a question of fact. The presiding judge was clothed with the authority, was well qualified, and had the best opportunity to reach a correct conclusion. The evidence was ample to support the court's finding and we will not interfere.

*Affirmed.*

BLUME, C. J. and PARKER, J. concur.