**Vicki Jo DAILY, Appellant (Plaintiff),**

v.

**Ingrid BONE, Administratrix, of the Estate of John Earl Bone, and Douglas Case, Appellees (Defendants).**

**No. 94–251.**

Supreme Court of Wyoming.

Nov. 9, 1995.

Robert W. Horn of Robert W. Horn, P.C., Jackson, and Steven D. Olmstead, Jackson, for Appellant.

R. Michael Mullikin of Mullikin, Larson & Swift, Jackson, for Appellees.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

TAYLOR, Justice.

John Bone drove Douglas Case's snowmobile through a stop sign onto a major highway, causing a collision with Vicki Jo Daily's pickup truck. Although not physically injured, Vicki Jo Daily was emotionally traumatized by John Bone's abrupt death at the scene. Vicki Jo Daily sued John Bone's estate and Douglas Case alleging, *inter alia,* negligence and negligent entrustment. Perceiving an action grounded in negligent infliction of emotional distress, the district court granted summary judgment for John Bone and Douglas Case.

This case sounds in negligence and is remarkable only because the injuries are mental rather than physical. We reverse the summary judgment and remand for a trial on the merits.

## I. ISSUES

Appellant, Vicki Jo Daily (Daily), stated the following issue in her opening brief:

I. Where the primary victim involved in a serious snowmobile/truck wreck and its aftermath suffers a mental injury in the occurrence, after experiencing the especially horrendous death of the operator of the snowmobile, may the victim seek compensation from the owner of the snowmobile and the estate of the deceased snowmobile operator for negligent infliction of emotional distress?

Appellees, Ingrid Bone, administratrix of John Bone's estate (Bone), and Douglas Case (Case), articulated the following issues:

I. Whether appellant has waived the right to appeal as to the court's judgment in favor of appellee Douglas Case on the theory of negligent entrustment.

II. Whether the alleged negligent acts of appellee John Bone, deceased, in causing an automobile/snowmobile collision constitute the legal and proximate cause of appellant's alleged psychic injuries.

III. Whether the claim of appellant comes within the limitations of the rule in *Gates v. Richardson* [719 P.2d 193 (Wyo.1986) ].

IV. Whether this Court should create an additional actionable claim for pure psychic injury beyond the limitations of the rule in *Gates v. Richardson.*

Thus challenged, Daily submitted a timely reply brief, positing two supplemental issues:

I. Does *Gates v. Richardson* prohibit compensation to a person who is a victim of negligence rather tha[n] a bystander observer of the consequences of negligence?

\* \* \* \* \* \*

II. Whether the appellant waived or abandoned her appeal of the summary judgment pertaining to defendant, Douglas Case?

## II. FACTS

Bone, a fifty-six-year-old North Carolinian vacationing in Teton County, Wyoming, agreed to a snowmobile excursion with his friend, Case. Case, who had twenty years of snowmobiling experience, drove his own ma-

chine and provided Bone, a snow machine novice, with a high-performance machine for the trip. On the morning of February 4, 1993, Case and a friend found themselves waiting on their snowmobiles at the crest of a small hill, looking back across U.S. Highway 26[1] at Bone, who had stopped the machine he was driving on the trail, thirty or forty feet short of the highway.

U.S. Highway 26 was clear and dry on that February morning as Daily and her daughter drove south to honor a business commitment in Riverton, Wyoming. The speed limit on that stretch of road is fifty-five miles per hour, but Daily was proceeding at about forty-five miles per hour, having seen Case and being concerned about snowmobile traffic. Inexplicably, Bone then drove Case's snowmobile through a clearly posted "STOP" sign directly into Daily's path. Daily had no opportunity to avoid the impact, which all agree was directly attributable to operator error on Bone's part.

On impact, Daily saw Bone's helmet fly off as he was propelled on to the hood of her pickup, only to slide off as Daily stopped. Neither Daily nor her daughter sustained immediate physical injury, but Daily rushed to comfort and care for Bone, who was seriously injured. Daily cushioned Bone's head from the pavement, speaking to him reassuringly. Luckily, it seemed, an emergency medical technician arrived almost immediately and Daily assisted his efforts. However, Bone became agitated and was moved into an ambulance from which Daily was barred.

A medical evacuation helicopter circled the area and left without landing. Daily cannot remember who told her that Bone had died, but she does remember becoming distraught at the news and needing to be driven home. Thereafter, Daily's emotional equipoise deserted her, leaving her unable to work, fearful of leaving her home, and unable to relate well to others, including her husband and daughter. Daily was diagnosed as suffering from post traumatic stress disorder, depression and agoraphobia, all stemming directly from the accident. One expert calls her prognosis guarded, while another terms it positive "due mostly to her commitment to therapy and her desire to improve and master the feelings she is experiencing."

Daily sued, alleging negligence and recklessness against Bone's estate while accusing Case of negligence and negligent entrustment. Case filed a motion for summary judgment pursuant to W.R.C.P. 56(b), asserting that Case was neither negligent nor negligent in entrusting his snowmobile to Bone. Bone's estate filed a similar motion, suggesting Daily is not a "permissible plaintiff" in a suit alleging negligent infliction of emotional distress and, in any event, arguing that Daily's injuries were not proximately caused by the impact with Bone.

Recognizing a suit "for various forms of negligence," the district court nonetheless concluded that lack of a familial relationship barred Daily from recovery for negligent infliction of emotional distress against Bone's estate and, consequently, barred *any* claim against Case. The district court also opined that no material factual issues would exist, even were negligent infliction of emotional distress a claim available to Daily.

## III. DISCUSSION

### A. Scope and Standard of Review

■ Summary judgments are a beneficial tool for eliminating formal trials where *only* questions of law are at issue. *Bryant v. Hornbuckle*, 728 P.2d 1132, 1135 (Wyo.1986). Unadulterated issues of law must present themselves in the context of settled facts. *Iberlin v. TCI Cablevision of Wyoming, Inc.*, 855 P.2d 716, 719 (Wyo.1993). Accordingly, where genuine issues of material fact exist, summary judgment is inappropriate. *Hanna v. Cloud 9, Inc.*, 889 P.2d 529, 532 (Wyo. 1995). Materiality is a function of a disputed fact's capacity to establish or refute an essential element of any asserted cause or defense thereto. *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 216 (Wyo.1994).

■ Our perspective on factual matters in review of summary judgments affords a *de novo* review of the same record available to the district court. *Forbis v. Minter*, 869

---

**1.** The primary and most direct route linking Teton County with central Wyoming.

P.2d 151, 152 (Wyo.1994). We indulge the materials of the party opposing summary judgment with every favorable inference which may fairly be drawn from the record. *Tidwell v. HOM, Inc.*, 896 P.2d 1322, 1325 (Wyo.1995). A general reluctance to place our imprimatur upon summary judgments redoubles in negligence cases which often turn on the factual issue of whether an actor behaved reasonably under the circumstances. *Calkins v. Boydston*, 796 P.2d 452, 454 (Wyo. 1990).

### B. NEGLIGENCE

 Three counts of Daily's complaint allege negligence. The elements of negligence are: (1) a duty, (2) a violation thereof, (3) which violation is the proximate cause of, (4) injury to the plaintiff. *Thomas By Thomas v. South Cheyenne Water and Sewer Dist.*, 702 P.2d 1303, 1307 (Wyo.1985); *Hines v. Sweeney*, 28 Wyo. 57, 201 P. 1018, 1021 (1921).

### 1. DUTY

 Without duty, negligence is not actionable. *MacKrell v. Bell H2S Safety*, 795 P.2d 776, 779 (Wyo.1990). The existence of duty is a question of law, making an absence of duty the surest route to summary judgment in negligence actions. *Tidwell*, 896 P.2d at 1325.

Had he been at the wheel of an automobile, Bone's duty to stop would be a foregone conclusion. *Rogers v. Hansen*, 361 P.2d 676, 678 (Wyo.1961). Because his vehicle was Case's snowmobile, the stop sign on Bone's trail only enhanced a pre-existing statutory duty of "yielding the right-of-way to all traffic in the main-traveled roadway." Wyo.Stat. § 31–5–801 (1994).

 In Wyoming, duty may arise by operation of statute. *Culver v. Sekulich*, 80 Wyo. 437, 463, 344 P.2d 146, 156 (1959). The facts developed for summary judgment show, as a matter of law, that Bone owed a duty to motorists like Daily to avoid collision. Existence of that legal duty is sufficient to commend the factual issue of Bone's negligence in colliding with Daily to a jury's delibera-

tion. *Danculovich v. Brown*, 593 P.2d 187, 190 (Wyo.1979).

### 2. VIOLATION OF DUTY

 Automobile accidents involving violation of a duty to yield create issues of fact for examination by a jury. *Brockett v. Prater*, 675 P.2d 638, 641 (Wyo.1984); *Wilhelm v. Cukr*, 68 Wyo. 1, 23, 227 P.2d 988, 996 (1951). We can perceive no rational basis for withholding such factual matters from a jury merely because one vehicle happens to be a snowmobile.

### 3. PROXIMATE CAUSE

Whether the injury was the natural and probable consequence of Bone's collision with Daily is also a question of fact normally not to be taken from the jury. *Lynch v. Norton Const., Inc.*, 861 P.2d 1095, 1099 (Wyo.1993). Typically, a causal link is sought between a defendant's tort and compensable **physical** injury **to the plaintiff**. *Keehn v. Town of Torrington*, 834 P.2d 112, 115 (Wyo.1992). Here, Bone's alleged negligence placed Daily, through no fault of her own, in the position of being the cause of Bone's demise. Somewhat paradoxically, then, although the physical injury was incurred by Bone, it is alleged to have caused pain and suffering to the physically uninjured Daily.

 The operator of an instrumentality which causes the death of another might naturally be expected to suffer emotional distress, even in the complete absence of culpability. *Outten v. National R.R. Passenger Corp.*, 928 F.2d 74, 79 (3rd Cir.1991). In Wyoming, it is not necessary that a defendant anticipate the precise injury incurred— only that he be able to anticipate *some* injury as a result of his tort. *Hines*, 201 P. at 1021.

### 4. INJURY TO PLAINTIFF

Daily is armed with substantial evidence on the factual issue of damages. *Mariner v. Marsden*, 610 P.2d 6, 11–12 (Wyo.1980) (*quoting Anderson v. Welding Testing Laboratory, Inc.*, 304 So.2d 351, 352 (La.1974)). However, because Daily alleges mental injury, the district court was drawn down the garden path of negligent infliction of emo-

tional distress by resourceful counsel for Bone's estate and Case.

A certain historic reluctance to assess damages based upon mental suffering, alone, may be attributable to uncritical acceptance of "sonorous" though suspect assertions that "[m]ental pain or anxiety the law cannot value, and does not pretend to redress, when the unlawful act complained of causes that alone." *Lynch v. Knight*, 9 H.L.C. 577, 598, 11 Eng.Rep. 854, 863 (1861) (quoted in Calvert Magruder, *Mental and Emotional Disturbance in the Law of Torts*, 49 Harv.L.Rev. 1033, 1033 (1936)).

Surprisingly, though, a pre-Chaucerian English barmaid successfully sued the irate customer who sought better service with a hand axe which flew wide of its mark only when the serving girl ducked. *I de S v. W de S*, 22 Y.B. Edward III, f. 99, pl. 60 (1348). Chief Justice Oliver Wendell Holmes, Jr. understood the logic of that ancient victory sufficiently to write for the Supreme Judicial Court of Massachusetts that: "it is an arbitrary exception, based upon a notion of what is practicable, that prevents a recovery for visible illness resulting from nervous shock alone." *Homans v. Boston Elevated Ry. Co.*, 180 Mass. 456, 457, 62 N.E. 737, 737 (1902).

*Homans* concerned a rail passenger who received a slight blow as a consequence of the rail company's fault in the operation of a train and "afterwards had a good deal of suffering of a hysterical nature * * *." The passenger eventually claimed damages solely for "nervous shock" arising from the battery. *Id.* Chief Justice Holmes wrote that such injuries were compensable "when there has been a battery and the nervous shock results from the same wrongful management as the battery[.]" *Id.*

▪ It is a fair statement of Wyoming law that Daily

"had a right to go about the public roads or places on [her] own business, free from molestation by [Bone] or any one, so long as [she] conducted [her]self in an orderly manner. * * * And any one guilty of violating any of these rights is liable for the actual damages suffered therefrom by the injured person. It matters not wheth-

er the wrong be one of pure neglect or a wanton or willful wrong; an action will lie for the actual damages suffered."

*Williams v. Campbell*, 22 Wyo. 1, 6, 133 P. 1071, 1072 (1913). The record before us suggests that Bone negligently injured Daily by the collision. If she can prove negligence, impact, and damages proximately flowing therefrom, recovery should not be denied simply because her injuries are mental rather than physical.

Such a recovery would be predicated upon the traditional, completed tort found when the negligence of one party results in an automobile collision which causes injury to the other party. "Whether there can be a recovery for the consequences of fright caused by unintentional want of care depends in the first place upon the question whether a legal right of the plaintiff has been invaded by the defendant's negligence." *Comstock v. Wilson*, 257 N.Y. 231, 177 N.E. 431, 433 (1931). Here, the impact was an invasion of Daily's right to go about her business "free from molestation[.]" *Williams*, 133 P. at 1072.

When duty, breach and cause are established, recovery of damages for mental injury is not novel to Wyoming jurisprudence. W.C.P.J.I., No. 4.01 shows pain and suffering to be the first claimed element of damages. In the aftermath of a negligent impact, each succeeding element of damages in that instruction might be susceptible of proof notwithstanding the purely mental character of the injury. W.C.P.J.I., No. 4.01(b) through (f).

## C. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

▪ Like the familiar outlaws of a B-grade western, scraping brush across their tracks and riding through water, the facts of this case do plenty to obscure the trail leading to our holding. Not only does Daily allege mental and emotional injuries, but instead of assigning physical injury to herself as the cause, she faults trauma to the alleged tortfeasor, Bone. Capitalizing thereon, Bone's estate and Case endeavor to divert attention from the underlying negligent impact to the proposition that Daily's claim is

for the tort of negligent infliction of emotional distress, as recognized by *Gates v. Richardson*, 719 P.2d 193 (Wyo.1986).

Negligent infliction of emotional distress is a tort theory currently in flux. *R.D. v. W.H.*, 875 P.2d 26 (Wyo.1994). Care must be employed, however, to distinguish that tort from actions where a plaintiff is the direct victim of a traditional, completed tort. The nature of injuries caused by such a tort is neither the threshold nor the definitive question. Rather, as Chief Judge Cardozo recognized:

> [L]iability is always anterior to the question of the measure of the consequences that go with liability. If there is no tort to be redressed, there is no occasion to consider what damage might be recovered if there were a finding of a tort. We may assume, without deciding, that negligence, not at large or in the abstract, but in relation to the plaintiff, would entail liability for any and all consequences, however novel or extraordinary.

*Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99, 101 (1928). Daily's case is grounded in Bone's negligent collision with her, and appellees' maneuvering cannot obfuscate that well-settled basis. Bone's duty was not to collide with Daily. Duties giving rise to the tort of negligent infliction of emotional distress have no application.

### D. EXISTENCE OF FACTUAL ISSUES

The order being appealed concludes in a somewhat cryptic fashion:

> 4. Even if the Court was inclined to [accept] Plaintiff's claim of negligent infliction of emotional distress, the Court does not agree there are genuine issues of material fact as to the negligent entrustment or general negligence claim. As such, genuine issues of material fact are not at issue in this case and the defendants are entitled to judgment as a matter of law.

Without accepting the application of negligent infliction of emotional distress to the facts of this case, our holding is that Bone had a duty to avoid the collision with Daily. The existence of that duty obliges the district court to submit the factual issues of breach, proximate cause, injury and damages to a jury.

There is no question that Daily has a tough row to hoe on the issue of negligent entrustment, which we have held to require a showing that the "entruster either knew or should have known that the person to whom the instrumentality was entrusted was incompetent." *Moore v. Kiljander*, 604 P.2d 204, 206 (Wyo.1979) (*citing Finch v. Canaday*, 75 Wyo. 472, 487, 297 P.2d 594, 598 (1956) and Restatement of Torts (Second), § 390 (1965)). The Restatement provides, however, that competence may be measured by inexperience, which Daily has alleged and appellees have admitted as to Bone (albeit in varying degrees) sufficient to create an issue of fact for a jury.

Finally, Daily predicates a request for punitive damages against Bone's estate upon allegations that Bone drove in a reckless manner. This claim must fail, as a matter of law, because punitive damages may not be recovered from the estate of a deceased tortfeasor. *Parker v. Artery*, 889 P.2d 520, 525 (Wyo.1995).

## IV. CONCLUSION

Almost a century has passed since Chief Justice Holmes recognized the ill-founded, archaic and arbitrary nature of the rule precluding recovery for mental distress occasioned by a battery but unaccompanied by profound physical trauma. Notwithstanding Chief Justice Holmes' sentence, we realize that some persist in characterizing the tort of negligent infliction of emotional distress more by virtue of the injury's nature than by consideration of the duty breached. *See Reynolds v. State Farm Mut. Auto. Ins. Co.*, 611 So.2d 1294 (Fla.App.1992). This may render the district court's view of this case understandable. It cannot, however, summon our approval.

Case had a duty not to negligently entrust a snowmobile to an incompetent operator, and Bone had a duty not to run into Daily. Whether either negligently breached their duties causing damages for which Daily should be compensated are factual questions for a jury. Measurement of the legitimacy and proper extent of claims for mental and emotional damages stemming from a tradi-

tional, completed tort is the proper role of juries.

The summary judgment entered by the district court is reversed and the matter is remanded for a trial on the merits.