# IN THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 67

## APRIL TERM, A.D. 2023

## July 5, 2023

ROBERT CARDENAS, ASHLEY
CARDENAS, SAVANNAH CARDENAS,
and BRAYLON CARDENAS,

Appellants
(Plaintiffs),

v.                                                                        S-22-0223

SIGIEL J. SWANSON,

Appellee
(Defendant).

*Appeal from the District Court of Natrona County*
*The Honorable Daniel L. Forgey, Judge*

*Representing Appellants:*
Gary L. Shockey, Gary L. Shockey, PC, Casper, Wyoming. Argument by Mr. Shockey.

*Representing Appellee:*
Michael T. Sullivan and Winslow R. Taylor, III, Tucker Holmes, P.C., Centennial, Colorado. Argument by Mr. Taylor.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**GRAY, Justice.**

[¶1]    Robert (Bob), Ashley, Savannah, and Braylon Cardenas (the Cardenas family) sued to recover damages for emotional distress they suffered when their dogs died after becoming entangled in snares set by Sigiel J. Swanson.  Mr. Swanson moved for summary judgment, asserting that emotional distress was not compensable because dogs are property.  The district court granted summary judgment and the Cardenas family appeals. We affirm.

## *ISSUES*

[¶2]    We restate the issues:

  1.  Can members of the Cardenas family recover damages for emotional injuries suffered because of the loss of their dogs?

  2.  Should this Court allow the recovery of emotional distress damages for the loss of a pet?[1]

## *FACTS*

[¶3]    The following facts are undisputed.  The Cardenas family (Father Robert (Bob), Mother Ashley, and children Savannah and Braylon) owned three St. Bernard dogs, Brooklyn, Barkley, and Jax.  The Cardenas home was situated in the foothills of Casper Mountain, adjacent to large tracts of state land.  The dogs frequently ran unleashed on the state land and neighboring private land.  They would always return home before dark.

[¶4]    On the afternoon of November 29, 2014, the dogs were let outside to run.  Barkley and Jax returned home that night, but Brooklyn did not.  Over the next several days, the family searched for Brooklyn, to no avail.

[¶5]    On Tuesday, December 2, while their parents were at work, Savannah and Braylon continued the search.  They took Barkley and Jax thinking the dogs might be helpful.  As they walked along a ridgeline on the state land, Barkley ran ahead and down a draw. Barkley did not come back, and Savannah and Braylon followed his path.  They found Barkley lying in some brush, caught in a snare, with an apparent broken neck.  Savannah and Braylon tried unsuccessfully to free Barkley from the snare and in the process, Braylon injured his hands.  Savannah, in a highly emotional state, phoned her mother, declaring

---

[1] The Cardenas family presents a third issue—whether the snares were set illegally on state land.  We do not address this issue as the first two issues are dispositive.

1

"he's dead." Under the circumstances, Ashley thought something had happened to her son, Braylon.

[¶6]   Ashley phoned Bob, and they both left work to look for the children. In the meantime, Jax, who had followed Savannah and Braylon into the draw, was caught in a different snare. Savannah and Braylon tried unsuccessfully to loosen the snare, but Jax, too, died.

[¶7]   When Ashley and Bob arrived, they found Braylon "rolled up in a ball, crying" and Savannah "crying, apologizing over and over" for being unable to save the dogs. The two children were utterly distraught. A few minutes later, a neighbor called to say he had located Brooklyn, who had also been caught in a snare and died.

[¶8]   Sigiel J. Swanson, a trapper, set the snares that caught the Cardenas' dogs. The Cardenas family sued Mr. Swanson asserting claims of "negligence, willful and wanton misconduct, violation of statutes, infliction of emotional distress," and civil rights violations.[2]

[¶9]   Mr. Swanson filed a motion to dismiss. The district court granted the motion in part, dismissing the Cardenas' claims for negligent infliction of emotional distress, intentional infliction of emotional distress, and civil rights violations. The negligence claims—for Braylon's personal injury, punitive damages for willful and wanton misconduct, property damage for loss of the dogs and emotional distress damages in relation to these claims—remained. After discovery, Mr. Swanson filed a motion for summary judgment, arguing the remaining claims failed as a matter of law, and seeking a determination that purely emotional damages are not recoverable. The district court granted the motion in part and denied it in part. It found that Mr. Swanson's conduct was not willful and wanton as a matter of law and that to the extent that the Cardenas' remaining claims sought emotional damages arising from the loss of the dogs, damages could not be recovered. This left the claims for property damage based on the loss of the dogs, and Braylon's personal injury unresolved. The parties reached an agreement on the property damage leaving only Braylon's personal injury claim. The district court found that to the "extent that [Braylon's] claim continues, it is closely enough related to other claims for emotional traumatic loss . . . [that] all other claims in this case should be appealable" and certified that there is "no just cause for delay for appeal." The Cardenas family appeals.

---

[2] The Cardenas family also sued the Wyoming Game and Fish Commission, the Wyoming Game and Fish Department, and Brian Olsen and Janet Milek, employees of the Wyoming Game and Fish Department. The claims against the Game and Fish Commission, the Game and Fish Department, and its employees have been dismissed and are not at issue here.

*STANDARD OF REVIEW*

[¶10]  Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." W.R.C.P. 56(a).  This Court reviews an order granting summary judgment de novo and may affirm on any basis in the record.

> [W]e review a summary judgment in the same light as the district court, using the same materials and following the same standards.  We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.  A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.
>
> The movant bears the initial burden of establishing a prima facie case for summary judgment using admissible evidence.  If the movant establishes a prima facie case for summary judgment, the burden shifts to the opposing party to present admissible evidence demonstrating a genuine dispute of material fact for trial.
>
> *Peterson v. Meritain Health, Inc.*, 2022 WY 54, ¶¶ 14–16, 508 P.3d 696, 704 (Wyo. 2022) (internal citations and quotation marks omitted); *see also* W.R.C.P. 56(c) (requiring evidence supporting and opposing summary judgment to be admissible).

*Primrose Ret. Communities, LLC v. Ghidorzi Constr. Co., LLC*, 2023 WY 15, ¶ 8, 523 P.3d 1219, 1224 (Wyo. 2023).

*DISCUSSION*

I.    ***Can members of the Cardenas family recover damages for emotional injuries suffered because of the loss of their dogs?***

[¶11]  The Cardenas family argues that Savannah and Braylon have claims for emotional injuries suffered from watching their dogs die because of Mr. Swanson's alleged negligence.

## A.  Emotional injuries for the loss of property are not recoverable.

[¶12]  In *Larsen v. Banner Health System*, we examined our precedent as it relates to situations in which a plaintiff may make a claim for emotional damages.  We noted that "[t]raditionally recovery for mental or emotional injury was only allowed when [the emotional] injury was linked to an actual or threatened physical impact" but noted "[m]any state courts have modified this traditional rule." *Larsen v. Banner Health Sys.*, 2003 WY 167, ¶¶ 6–7, 81 P.3d 196, 199 (Wyo. 2003) (citing *Gates v. Richardson*, 719 P.2d 193, 195 (Wyo. 1986)).  We pointed out that while Wyoming has allowed recovery for purely emotional injury, it has restricted the circumstances where recovery for emotional injury without accompanying physical injury will be allowed:

> Recovery for purely emotional distress is permitted in Wyoming in certain limited underlying actions.  These actions are: "1) some intentional torts, *Waters v. Brand*, 497 P.2d 875, 877–878 (Wyo. 1972) (false imprisonment); *Cates v. Eddy*, 669 P.2d 912, 921 (Wyo. 1983) (malicious prosecution); 2) violation of certain constitutional rights, *Town of Upton v. Whisler*, 824 P.2d 545, 549 (Wyo. 1992); and 3) breach of the covenant of good faith and fair dealing, *State Farm Mutual Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 833 (Wyo. 1994)." *Blagrove* [*v. JB Mech., Inc.*,] 934 P.2d [1273, 1275–76 (Wyo. 1997)].  We have also recognized the torts of intentional and negligent infliction of emotional distress, but we have done so only under limited circumstances. *Blagrove*, 934 P.2d at 1275; *Gates* [*v. Richardson*,] 719 P.2d [193, 195 (Wyo. 1986)] (negligent infliction of emotional distress limited by the requirements of a family relationship and observation of serious bodily harm); *Leithead v. American Colloid Co.*, 721 P.2d 1059, 1066 (Wyo. 1986) (intentional infliction of emotional distress limited by the requirements of extreme or outrageous conduct and severe emotional distress).
>
> This court has also considered the issue of purely emotional damages in a negligence action involving a car collision.  In *Daily v. Bone*, 906 P.2d 1039 (Wyo. 1995), Bone failed to stop the snowmobile he was driving at a stop sign.  Bone's failure to stop caused a collision with Daily's vehicle. *Id.* at 1042.  Daily was not physically injured in the collision; Bone, however, was killed as a result of the impact. *Id.* Witnessing Bone's impact and death caused Daily posttraumatic stress disorder, depression, and agoraphobia. *Id.* We held that recovery in tort for injuries arising out of an

4

automobile accident should not be denied simply because the plaintiff's injuries were mental rather than physical, as long as the plaintiff could prove negligence, impact, and damages proximately flowing therefrom. *Id.* at 1044.

Our holding in *Daily* convinced some that we had established a claim for negligence alleging only mental injury. In *Blagrove*, however, we explained that our decision in *Daily* "has the limited scope of allowing recovery for mental injury absent physical injury in an automobile collision case." *Blagrove*, 934 P.2d at 1276 (holding that as a general rule emotional distress damages in connection with property damage are not compensable). We went on to explain that *Daily* resulted from the particular facts of that case and "did not generally establish that a claim for negligence alleging only mental injury had been recognized in Wyoming." *Id.* However, we note that *Blagrove* was a case in which the defendant's negligence resulted in property damage; and we qualified the previous statement by also saying that *Daily* did not provide "an analysis which would extend its result to a property damage situation."

*Larsen*, ¶¶ 8–10, 81 P.3d at 199–200.

[¶13] Following our review of the relevant precedent, we considered the situation presented in *Larsen*. There a mother and daughter were separated for forty-three years because a hospital switched two newborn babies at birth. The plaintiffs had filed suit alleging emotional injury and asking for damages. We held the mother and daughter could maintain a negligence action where the only alleged damages are great emotional pain, humiliation, anxiety, grief, and expenses for psychological counseling. In arriving at our conclusion, we made clear that "in the limited circumstances where a contractual relationship exists for services that carry with them deeply emotional responses in the event of breach, there arises a duty to exercise ordinary care to avoid causing emotional harm" and Wyoming law allowed recovery. *Id.* ¶ 39, 81 P.3d at 206.

[¶14] Appellants argue that the limited exception in *Larsen* applies to their claims. They focus on language in *Larsen* which states that "the availability of [emotional distress] damages must be limited to plaintiffs who can prove that emotional injury occurred under circumstances tending to guarantee its authenticity." *Id.* ¶ 20, 81 P.3d at 202. They argue that there "should be little doubt that the circumstances surrounding the deaths of Barkley and Jax authenticate" Savannah and Braylon's emotional injury claims. While we do not doubt the genuineness of the family's grief, authenticity is not the determinative factor giving rise to a cause of action for emotional harm. *Id.* ¶ 39, 81 P.3d at 206–07.

5

[¶15]   Here, not only is there is no contractual relationship for services that carry with them deeply emotional responses in the event of breach, there is no contractual relationship between the Cardenas family and Mr. Swanson whatsoever.  This case is more akin to *Blagrove v. JB Mech., Inc.*  There, the homeowners sued a plumbing contractor seeking recovery for mental anguish suffered when flooding damaged their home and destroyed personal possessions.   The homeowners argued that our precedent suggested that "emotional damages are recoverable for property damage without accompanying physical injury," and "mental anguish damages are available where a plaintiff shows the existence of a completed tort, namely, negligence." *Blagrove v. JB Mech., Inc.*, 934 P.2d 1273, 1275 (Wyo. 1997).  We held "emotional distress damages in connection with property damages are not compensable." *Blagrove*, 934 P.2d at 1277; *see also Long-Russell v. Hampe*, 2002 WY 16, ¶ 10, 39 P.3d 1015, 1018 (Wyo. 2002).

[¶16]   Under Wyoming law, dogs are property.  Wyo. Stat. Ann. § 11-31-102 (LexisNexis 2023) ("Dogs are personal property . . . .").  While we do not question the Cardenas family's heartache over the deaths of their dogs, *Blagrove* precludes recovery for emotional distress damages under these facts.  *See also Steller v. Bischoff*, No. 07-CV-24-J, 2007 WL 9710251 (D. Wyo. June 25, 2007) (holding that plaintiff could not recover emotional distress damages for the death of his horse in malpractice action against vet).  The district court properly granted summary judgment on those claims.

**B.     Minor injuries suffered by Savannah and Braylon do not give rise to a claim for emotional distress damages.**

[¶17]   It is undisputed that Braylon incurred minor injuries to his hands when he attempted to free the dogs from the snares.  The Cardenas family contends that Savannah also had "physical effects" from trying to free the dogs.[3]  The question posed is whether these minor physical injuries give Savannah and Braylon a claim for emotional distress damages arising from the loss of the dogs.  The answer is no.

[¶18]   Savannah and Braylon have no claim for witnessing the deaths of their dogs.  Under what is known as the traditional impact rule, "a plaintiff [can] not recover for mental injuries unless they [are] linked to an actual or threatened physical impact [to the plaintiff] caused by the defendant." *Gates*, 719 P.2d at 195 (citing W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 54, at 362–64 (5th ed. 1984)).  *See also Long-Russell*, ¶ 11, 39 P.3d at 1018–19.  *See, e.g.*, *Montoya v. Pearson*, 2006-NMCA-097, ¶ 19, 142 P.3d 11, 16 (motorcyclist who suffered physical injuries in collision was entitled to compensation for emotional distress arising from his own injuries, but not for emotional distress arising from witnessing his fiancée's death in the collision); *Carlson v. Ill. Farmers Ins. Co.*, 520

---

[3] We note that in the Cardenas' Opposition to Defendant Swanson's Motion for Summary Judgment, they stated, "Savannah did not suffer any physical injury . . . ."

6

N.W.2d 534, 537–38 (Minn. Ct. App. 1994) (surviving passenger who suffered serious injuries in automobile accident could not recover for emotional distress arising from witnessing death of her friend in the accident); *Reynolds v. State Farm Mut. Auto. Ins. Co.*, 611 So. 2d 1294 (Fla. Dist. Ct. App. 1992) (woman who was injured in automobile accident could recover damages for emotional distress "flow[ing] from [her own] physical injuries . . . sustained in [the] impact" but not for emotional distress resulting from her fiancé's death in the accident). The fact that emotional distress was accompanied by physical injuries does not change the rule that emotional distress damages resulting from property damage are not compensable. Even if the Cardenas family could clear the property damage hurdle, their claim for emotional distress results from the death of the dogs and not the injuries sustained by the children. While Savannah and Braylon might be entitled to emotional damages for their own injuries, the impact rule does not extend their recovery to emotional damages caused by the death of the dogs. *See supra* ¶ 12; *Blagrove*, 934 P.2d at 1277.

## II.      *Should this Court allow the recovery of emotional distress damages for the loss of a pet?*

[¶19]  The Cardenas family urges the Court to adopt a "rule that emotional damages are recoverable [for loss of property] when the acts or omissions of the defendant were illegal or unauthorized by law." We decline to do so.

[¶20]  The Cardenas family concedes that most jurisdictions do not allow recovery of emotional distress damages for the loss of a pet. Where recovery is allowed, jurisdictions have limited the circumstances to those where a pet was killed intentionally or with malice. *See* Jay M Zitter, Annotation, *Recovery of Damages for Emotional Distress Due to Treatment of Pets and Animals*, 91 A.L.R.5th 545, § 3 (2001 & Supp.); *Blagrove*, 934 P.2d at 1276 ("[e]motional distress is not usually recoverable as an element of property damages unless an improper motive is involved") (citing *Valley Dev. Co. v. Weeks*, 364 P.2d 730, 733 (Colo. 1961)); *see also McDougall v. Lamm*, 48 A.3d 312, 326 (N.J. 2012) (a dog owner cannot recover for negligent infliction of emotional distress for the loss of a dog); *Fackler v. Genetzky*, 595 N.W.2d 884, 891 (Neb. 1999) (animals are personal property "and recovery cannot be had for emotional damages resulting from the negligent destruction of that property").

[¶21]  Nevertheless, the Cardenas family urges the Court to embrace the rationale set forth in *A Clarion Call for Emotional Damages in Loss of Companion Pet Cases*. The article states that there is:

> anecdotal evidence that some pet owners categorize their animals as something other than tangible, personal property. It then examines U.S. legislation which recognizes and protects the use of emotional support animals. The paper advances the

7

proposition that the recognition of the psychological benefit in such legislation inherently suggests that damages for emotional harm should be recoverable in pet loss cases, whether or not the animal is a trained emotional support dog. **It argues that some animals, because of this emotional attachment to some owners, should fall into a *property-plus* category. As such, in appropriate circumstances, damages for mental distress resulting from either the intentional or negligent destruction of a pet should be recoverable.**

Debra D. Burke, *A Clarion Call for Emotional Damages in Loss of Companion Pet Cases*, 15 Tenn. J.L. & Pol'y 250, 251–52 (2021) (emphasis added).

[¶22]  The Cardenas family proposes that the Court draw a distinction between animate and inanimate personal property and allow recovery for emotional distress damages when animate property is negligently harmed.  This is an argument best made to the legislature, and we decline to expand the reach of emotional damages to property inanimate or animate.

## *CONCLUSION*

[¶23]  Members of the Cardenas family cannot recover damages for emotional injuries suffered because of the loss of their dogs.  This Court declines the invitation to adopt a rule allowing for the recovery of emotional distress damages for the loss of a pet.  Affirmed.