THE WESTERN UNION TELEGRAPH COMPANY, *Plaintiff in Error*, v. W. P. REDDING, *Defendant in Error*.

Division A.

Opinion filed August 2, 1930.

*Francis R. Stark* (N. Y.), *Martin & Martin, John E. & Julian Hartridge,* and *William Blount Myers,* for Plaintiff in Error;

*J. C. Davant* and *Whitehurst & Whitehurst,* for Defendant in Error.

Brown, J.—When this case was before this Court the first time, (See 114 So. R. 533, 94 Fla. 905) it was held that the declaration was defective in that it alleged that "plaintiff was *subjected* to great anguish and mental suffering," etc., and it was remarked, in the opinion by Mr. Justice Terrell, that "there may be a marked distinction between actually suffering mental anguish and being 'subjected' to it."

The declaration was amended to meet this criticism, and on the second trial of the case, upon evidence differing in some respects from that introduced at the first trial, the

jury found in favor of the plaintiff in the sum of $1,000.00, upon which verdict judgment was rendered. Upon an examination of the record, it appears that there was evidence before the jury to sustain all of the allegations of the declaration which were put in issue by the pleas. Nor do we find that any reversible error was committed in the rulings upon the pleadings or in the giving or refusing of instructions to the jury.

Upon the first trial, it was observed in the opinion of this court that even if the declaration had alleged that the negligent transmission of the telegram had caused the plaintiff to suffer the mental anguish complained of, the evidence failed to prove such allegations; that the negligently transmitted telegram merely had the effect of confirming Dr. Creekmore's diagnosis, which was already known to Mr. Redding. The evidence on the second trial, however, goes to show that while Dr. Creekmore did not tell Mr. Redding about the receipt of the erroneously transmitted telegram until he had received the correction of it, it also shows that prior to receiving the misleading telegram, the doctor had never positively diagnosed the case as diphtheria; he had merely strongly suspected that it might be diphtheria, which suspicion he had communicated to Mr. Redding, and immediately upon the receipt of the erroneous telegram from Dr. Venters, of the State Health Department, about noon, Dr. Creekmore promptly administered the full "curative dose," 20,000 "units" of diphtheria anti-toxin; that about thirty minutes later Mr. Redding saw his little girl and saw that the anti-toxin had been administered, the two places on her back where the injection had been made being obviously noticeable, and he found her crying with pain from the effects of such injections; that about two hours later Redding saw the doctor who told him about the two telegrams. Mr. Redding testi-

fied that he came home as soon as he could get off from his work that afternoon, and that his little girl was very much worse; that her fever was higher and that her pulse was very rapid; that he and his wife sat up with her all night and thought that she was going to die; that during the night her pulse was so rapid that they could not count it; that by morning it had slowed down to where they could count it but that one or the other stayed with the little girl all that day and all the following night as her high fever and rapid pulse continued to make her condition appear to them as very serious.

It appears from the testimony that Dr. Creekmore would not have administered the diphtheria anti-toxin to the little girl had it not been for the error in the first telegram. The evidence also tends strongly to show that the administration of the anti-toxin had seriously deleterious effects upon the little girl and of such nature as to create fright and anguish on the part of her parents.

It is contended by the plaintiff in error that the sending of the specimen swabbed from the child's throat to Dr. Venters for examination and telegraphic report thereon, was due entirely to the voluntary act of Dr. Creekmore; that he had of his own volition and acting on his judgment as a physician, requested a report from Dr. Venters by telegram. There is some foundation for this in the doctor's testimony. However, the declaration alleges that the request made by Dr. Creekmore to Dr. Venters was made *at the instance and request* of the plaintiff and this allegation is sustained by the testimony of Mr. Redding. That Dr. Creekmore was at the time the employed physician of Mr. Redding is not denied.

Thus, while the evidence does not expressly show that Mr. Redding was himself informed of the receipt of the erroneous telegram until the corrected telegram had come

in, and hence could not have suffered any mental pain merely on account of the error in its transmission, unless his inspection of the little girl shortly after the injections were made caused him to suspect the import of the telegram, yet the fact remains that the painful and harmful effects of the injection of the diphtheria anti-toxin into the body of a little girl, who was already very sick from a different disease, was the result of the erroneous transmission of Dr. Venters' telegram, and that the condition of extreme suffering and apparent danger created by these injections naturally must have cause, and, as the evidence indicates, did cause, considerable mental pain and anguish on the part of Mr. Redding and his wife for a period of several days. While it appears from the evidence that the little girl was already quite sick with tonsilitis, the evidence tends to show that the needless injection of the diphtheria anti-toxin had very severe and painful effects upon the little girl, greatly aggravating all her symptoms, which caused her parents great mental pain and anguish for several days, and the jury were justified in finding that this condition would not have been brought about had it not been for the negligent and erroneous transmission of the original telegram, which was the efficient, moving and proximate cause thereof.

We think that a telegraph company, when transmitting a telegram from a physician, who was a bacteriologist of the State Health Department, which shows on its face that it is a report of a laboratory test as to whether a certain throat culture shows, or does not show, diphtheria, is charged with notice of the fact that an erroneous transmission of such a telegram may have disastrous effects upon the person from whose throat the culture specimen was taken, and may also cause great mental pain and anguish to such person's family. Telegrams of this kind may easily in

many cases involve the life or death of the person to whom the telegram relates. The nature of the telegram itself puts the company on notice of the reasonably possible effects of a mistake in its transmission sufficient to bring it within one phase of the rule in Hadley v. Baxendale as quoted in Western Union Telegraph Co. v. Taylor, 114 So. R. 529, 94 Fla. 841, wherein it was said:

"It is not essential that the message disclose all the details of the transaction to which it relates, nor the particular business intended. The rule in Hadley v. Baxendale does not require that the parties must have contemplated the actual damages which are to be allowed, but such as may reasonably be supposed to have been contemplated. It is not essential that the particular loss or injury sustained was contemplated, but the company is liable if the loss sustained should have been contemplated as a probable and proximate result of its negligence. Western Union Telegraph Co. v. Merritt et al., 55 Fla. 462, 46 So. R. 1024, 127 Am. St. R. 169; Western Union Telegraph Co. v. Taylor, *supra;* Western Union Telegraph Co. v. Crawford, *supra;* Hendershot v. Western Union Telegraph Co., 106 Iowa 529, 76 N. W. R. 828, 68 Am. St. R. 313."

The most serious question in this cast is the plaintiff's right to sue for damages for mental anguish. The action is apparently one in tort for a breach of defendant's public duty arising out of the acceptance for transmission of a telegram sent at the instance of the plaintiff. The plaintiff was neither the sender nor the sendee of the message. The name "Redding" was used in the telegram, though it is a debatable question as to whether it was used for the purpose of identifying the throat culture which was being reported on or to name the person for whom the

laboratory test had been made. This was doubtless a question for the jury to determine. The telegram as delivered to the telegraph company by Dr. Venters in Tampa for transmission to Dr. Creekmore at Brooksville was as follows:

"Redding throat culture negative diphtheria."
The message as it was delivered to Dr. Creekmore read:
"Redding throat culture received diphtheria."

General discussion of this question will be found in 37 Cyc., pages 1715-1722, and 26 R. C. L. 586-590. On page 589-590 of 26 R. C. L., the text reads as follows:

"Failure to exercise proper care in the receipt or transmission of messages will not render a telegraph company liable to one of whose interest in the message it has no notice and who is neither the principal of the sender nor of the addressee, but it has been held in a number of cases that an action for negligence in the transmission or delivery of a message may be maintained by one whose name appears on the face of the message or who is otherwise sufficiently designated or described as beneficiary, though he is neither sender nor addressee. The company owes the duty of care to such persons because injury to them is the natural and probable consequence of its want of care; an effect which it may reasonably anticipate from its notice of the fact that they are interested in the message. The. undisclosed principal of the sender of a message may recover for negligence in its transmission or delivery, because the company makes a contract with the sender which that knowledge of the law it may not deny notifies it inures to the benefit of any undisclosed principal the sender may have, but it has been held that in an.

action by the undisclosed principal all defenses are available which the defendant could urge against the agent, if suing, and that the undisclosed principal cannot recover a class of damages affecting his person, which ignorance of his existence put beyond the contemplation of the other contracting party. *. * * It would seem to follow from the principles just related that the undisclosed principal of the addressee might also bring the action, but the contrary has been held by the United States Circuit Court of Appeals and by some of the state courts. It is, however, apparently recognized that where the person interested in the telegram is the undisclosed principal of both the sender and the addressee he may recover.''

Prior to the enactment of the statute, 3388 Rev. Gen. Stats., now appearing as Section 5352, Comp. Gen. Laws, mental anguish resulting from the negligent transmission of telegraphic messages was not an element of recoverable damages in this state. It was made such by that statute. We think this statute must have been enacted in the light of the recognized principle of law that as a general rule an undisclosed principal may sue upon a contract made by his agent. E. O. Painter Fertilizer Co. v. DuPont, 56 Fla. 511, 47 So. R. 928; 21 R. C. L. 897 *et seq.*

It was decided some years ago by the Supreme Court of Alabama in the case of Manker v Western Union Telegraph Co., 137 Ala. 292, 34 So. R. 839, in an opinion by DOWDELL, J., which overruled several prior cases to the contrary, that the doctrine that an undisclosed principal could recover damages for breach of contract made by his agent should be applied in telegraph company cases. It was there said: ''Upon more mature consideration, we are now unable to see any sufficient reasons for holding that a principal may not maintain an action on a contract made by his agent

though such principal be not disclosed in the making of the contract.''

In Western Union Telegraph Co. v. Schriver, 142 Fed R. 538, 4 L. R. A. (N. S.) 678, the third head note reads as follows:

"The telegraph company owes the duty to exercise ordinary care to receive and transmit genuine messages correctly to senders, to addressees, and to those who appear in the telegrams to be beneficiaries thereof, because injury to them may be reasonably anticipated as the probable consequence of negligence. It owes a like duty to the undisclosed principals of senders, because the law charges it with knowledge that these principals are in privity with it, through contracts made by the senders, and injury to them from its negligence may be reasonably anticipated.''

Some courts hold that there can be no recovery for mental anguish alone; that recovery can only be had where some pecuniary damage is also shown. Western Union Telegraph Co. v. Krichbaum, 132 Ala. 535, 31 So. R. 607. But our statute above referred to has the effect of making mental anguish an independent element of recoverable damages. It is also held in Alabama that although an undisclosed principal may sue on a contract made by his agent with a telegraph company, yet where the plaintiff's relation to the contract was not disclosed to the company and did not appear from the telegram itself, having been sent by an undisclosed agent, plaintiff could not recover for mental anguish resulting from delay in delivery. Western Union Telegraph Co. v. Northcutt, 158 Ala. 539, 48 So. R. 553. And in some jurisdictions, a distinction is made between the right of an undisclosed principal to sue for the breach of a contract made by his agent for the transmission of a

telegram, in an action *ex contractu,* and his right to sue in *tort* for a breach of the public duty arising out of the contract. Thus, in MeGehee v. Western Union Telegraph Co., 169 Ala. 109, 53 So. R. 205, it was held that the addressee of a telegram could not sue *ex contractu* for a breach of the contract to transmit unless he was a party to the contract directly or through an agent, or unless the contract was made for his sole benefit; the remedy otherwise being in tort for breach of the company's duty arising out of the contract. It is, however, held by many courts that although actions of this character are usually brought in tort for a breach of the public duty owing to the plaintiff, yet the duty springs out of the contract and it is manifest that the defendant owes no public duty in sending a particular telegram except to those for whom or in whose behalf it has undertaken to transmit it. Thus, it was held in Helms v. Western Union Telegraph Co. (N. C.) 55 So. E. R. 831, 8 L. R. A. (N. S.) 249, that one who is not mentioned in a telegraphic message and whose interest therein is not communicated to the company, although he is in fact the one for whose benefit it was sent and who paid the charges for its transmission, cannot recover substantial damages for mental anguish caused by the failure promptly to transmit and deliver. The weight of authority up to the present time appears to be in support of the principle just stated. And yet, an undisclosed principal can recover on other kinds of contracts made by an agent for his benefit although his name be not mentioned therein nor his interest in any way indicated.

It would appear that the jury might reasonably have found from the evidence in this case that both Dr. Venters, the bacteriologist, the sender of the message, and Dr. Creekmore, the plaintiff's physician, the sendee of the message, were acting as the agents and for the benefit of the plaintiff, who put their services in motion by employing Dr. Creek-

more to treat his daughter and asking him to get a tele-graphic report from Dr. Venters on the throat specimen which he was sending him; and plaintiff's surname was mentioned in the telegram. In spite of the conflict of the authorities, we are inclined to the view that under the pleadings and evidence in this case, the plaintiff was entitled to recover, not only his actual pecuniary damages, but damages for mental anguish as well.

Affirmed.

TERRELL, C. J., AND ELLIS, J., concur.

WHITFIELD, P. J., AND STRUM AND BUFORD, J. J., concur in the opinion and judgment.