[No. B009957. Second Dist., Div. Three. Apr. 1, 1986.]

In re the Marriage of KAREN J. and ALVIN G. SEGEL.
KAREN J. SEGEL, Appellant, v.
ALVIN G. SEGEL, Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part I of the Discussion.

**COUNSEL**

Trope & Trope and William B. Anderson for Appellant.

Irell & Manella, Peter J. Gregora and Sharon Lybeck Hartmann for Respondent.

**OPINION**

**LUI, J.**—Appellant Karen J. Segel (wife) appeals from the trial court's order sustaining respondent Alvin G. Segel's (husband) demurrer and dis-

missing her complaint. The parties to this appeal are also parties to a related but separate appeal decided by this court. (See *In re Marriage of Segel* (1986) 177 Cal.App.3d 1030 [223 Cal.Rptr. 430], hereinafter referred to as *Segel I.*)

The first cause of action alleges a breach of contract contending that husband breached the marital settlement agreement between the parties which was incorporated in a 1976 interlocutory judgment of dissolution; the second cause of action is for fraud, alleging that husband misrepresented his financial condition and induced her to agree to a reduction in lifetime spousal support in exchange for a five-year spousal support arrangement; the third cause of action is for intentional tort and alleges essentially the same facts contained in the second cause of action; the fourth cause of action is for an intentional infliction of emotional distress, alleging essentially that husband has caused wife severe emotional distress by alienating the parties' child against her.

Because we determine that the first three causes of action in the complaint are barred by the doctrine of res judicata as a result of our decision in *Segel I*, and because we conclude that the fourth cause of action fails to state a cause of action cognizable under California law, we affirm the order entered below.

### Factual and Procedural Background

The complaint was filed on May 25, 1984, and states four causes of action.[1]

---

[1]The first cause of action alleges that husband breached the parties' 1975 marital settlement agreement which was embodied in the 1976 interlocutory judgment, by "never revealing to [wife] the true and correct amounts of his gross income earned and received by him after January, 1976, and by giving [wife] less than that amount of money to which she was entitled."

The second cause of action pleads fraud and alleges that husband fraudulently deluded wife "by having her agree to accept the sum of $60,000 as spousal maintenance and support for five years in lieu of 50% of [husband's] gross earned income for said time period, due allegedly to his poverty, and then subsequently thereto, in February, 1984 insisting that said agreement of March, 1977 constitutes a total and irrevocable waiver of [wife's] right to lifetime maintenance and support."

The third cause of action is for intentional tort and essentially repeats the allegations contained in the second cause of action.

The fourth cause of action attempts to plead an intentional infliction of emotional distress and alleges that "[Husband] has maliciously and intentionally prohibited [wife] from seeing her only child, who is in [husband's] physical custody, since on or about January 1, 1983, in total violation of court order of March, 1977 of Los Angeles County Superior Court in dissolution case number WED 28426, and has made extreme and outrageous threats against [wife] if she did try to enforce her right to see her only child. [¶] [Wife] has not seen her only child since July 4 or 5, 1983 which was the only time she has seen him in approximately

The parties' marriage was dissolved in 1976. The terms of the interlocutory judgment, which incorporated the detailed provisions of the 1975 marital settlement agreement, provided that husband would give wife spousal support of 50 percent of his gross income which would be offset by 50 percent of wife's monthly gross earnings.

In 1977, husband initiated proceedings to modify his spousal support to wife. As part of these proceedings, wife conducted discovery into husband's earnings between January 1976 and March 1977. Prior to the hearing on husband's motion to modify spousal support, the parties and their attorneys renegotiated the terms of the marital settlement agreement. They agreed to a stipulation modifying the 1975 agreement in various respects; the modifications included the transfer of the physical custody of the parties' child from wife to husband, with husband assuming full responsibility for the support of the child, and a modification of husband's spousal support obligations to a nonmodifiable sum of $60,000 payable semimonthly at the rate of $500, over a five-year period. The stipulation was then recited in open court. Wife's attorney later prepared a modification order which he lodged with the court; the order was subsequently signed by the court in the form submitted. From 1977 through 1982, husband paid the agreed spousal support, making his last payment on March 15, 1982.

Over a year later, on May 24, 1983, wife filed an order to show cause re modification of support in which she sought spousal support equal to 50 percent of husband's gross earnings, alleging that the terms of the 1975 marital settlement agreement were reinstituted upon the completion of the five-year spousal arrangement. The order to show cause was filed in the trial court's proceedings which were the subject of the *Segel I* litigation.[2] The order to show cause also requested modification of the existing child visitation provisions that were part of the 1977 modification order.

On December 14, 1983, in the *Segel I* action, wife also filed an order to show cause and a declaration for contempt in re extrinsic fraud which alleged "[d]ue to recently discovered evidence in connection with the two Orders to Show Cause (re Contempt and Modification) filed in this matter, it is believed that [husband] has twice perpetrated extrinsic fraud upon

---

[*sic*] sixteen months, when [wife] had to institute litigation against [husband], and [wife] has suffered severe emotional distress because of this conduct. [Wife] has never been informed as to where her child attends school or how he is growing up. [¶] It is patently clear that [husband] is totally alienating [wife's] only child from her and that this child's mind is being and has been poisoned against his mother, [wife] . . . ."

The prayer in the complaint seeks damages of $8 million, plus punitive damages, interest, attorneys' fees and costs.

[2]Pursuant to Evidence Code section 459, we have taken judicial notice of the record on appeal in *Segel I*.

[wife] herein by (1) never revealing to [wife] the true and correct amount of his gross earned income received by him after January 1, 1976 (as is required in the Interlocutory Decree) and giving [wife] less than what [s]he was entitled to receive; and (2) by fraudulently deluding [wife] in early 1977 by having her agree to accept the sum of $60,000 for five years, and then subsequently insisting that said agreement constitutes an implied total and irrevocable waiver of [wife's] right to lifetime maintenance and support. . . ."

The order to show cause filed on December 14, 1983, contains further allegations that "[Husband], by inducing and deluding [wife] to make an agreement in 1977 . . . fraudulently prevented her from receiving '50% of his gross earned income' per annum since his financial circumstances in 1977 were *not* dire, but were, in actuality, continually improving. [¶] Sometime shortly after the hearing in March of 1977, in which [husband] claimed that his financial circumstances were dire, [husband] purchased a single-family residence located [in] . . . West Hollywood; subsequent to that he purchased another huge brand-new single family residence [in] Laguna Niguel, California. [¶] [Husband] currently resides . . . in the Pacific Palisades and we are uncertain as to whether or not [husband] owns this realty outright; [husband] is having constructed a new residence which will take about one year to complete and is believed to be purchasing a condominium in Palm Springs. [¶] It is easily apparent to any person of average intelligence that [husband], in early 1977 was blatantly untruthful in his statements to the Court as well as to [wife], and that [wife] has been egregiously harmed thereby." (Italics in original.)

The orders to show cause in the *Segel I* litigation eventually came before Judge Jerry Pacht on February 7, 1984. The matters were heard and then submitted. The minute order reflects that the appellant's order to show cause re contempt for extrinsic fraud was submitted without argument and denied. The court denied the appellant's request for modification of spousal support and also found "[t]here is no evidence that the [modification] agreement was procured by fraud, duress, or any inappropriate means."

Appellant filed a timely appeal from the order sustaining respondent's demurrer and dismissing her action.

CONTENTIONS ON APPEAL

Appellant contends:

1. The ruling of the family law court on February 7, 1984, does not bar her subsequent independent action which is the subject of this appeal; and

2. The fourth cause of action properly pleads a tort cause of action for intentional infliction of emotional distress.

DISCUSSION

I*

*Appellant's First Three Causes of Action Are Barred by Res Judicata*

. . . . . . . . . . . . . . . . . . . . . . .

II

*Appellant's Fourth Cause of Action for Intentional Infliction of Emotional Distress Fails to State a Cause of Action*

■ In *Hilltop Properties* v. *State of California* (1965) 233 Cal.App.2d 349, 354 [43 Cal.Rptr. 605, 37 A.L.R.3d 109], the appellate court stated: "The essence of a cause of action is the existence of a primary right and one violation of that right, i.e., it arises out of an antecedent primary right and corresponding duty, and a breach of such primary right and duty by the person upon whom the duty rests. [Citations.] The primary right and duty and the delict or wrong constitute the cause of action in the legal sense. [Citations.] 'The cause of action is simply the obligation sought to be enforced.' [Citations.]"

■ It is clear from our review of the fourth cause of action that the "primary right" which appellant seeks to enforce is her right to the society and affection of her child, namely, the right of filial consortium.

The right of filial consortium has not been recognized as a basis for a cause of action in California. In *Foy* v. *Greenblott* (1983) 141 Cal.App.3d 1, 7 [190 Cal.Rptr. 84], the appellate court stated: "Losses of parental or filial consortium are not actionable. '[T]he inadequacy of monetary damages to make whole the loss suffered, considered in light of the social cost of paying such awards, constitutes a strong reason for refusing to recognize the asserted claim.' (*Borer* v. *American Airlines, Inc.* (1977) 19 Cal.3d 441, 447 . . .; see also *Baxter* v. *Superior Court* (1977) 19 Cal.3d 461 . . . .)"

In *Borer* v. *American Airlines, Inc.* (1977) 19 Cal.3d 441 [138 Cal.Rptr. 302, 563 P.2d 858], the mother was struck by a falling light fixture in an

---

*See footnote, *ante,* page 602.

airline terminal and her nine children brought suit against the airline for loss of her services, companionship, affection and guidance. The trial court sustained the airline's demurrer to the complaint without leave to amend and a dismissal was entered accordingly. The Supreme Court affirmed holding that "[j]udicial recognition of a cause of action for loss of consortium, we believe, must be narrowly circumscribed. Loss of consortium is an intangible injury for which money damages do not afford an accurate measure or suitable recompense; recognition of a right to recover for such losses in the present context, moreover, may substantially increase the number of claims asserted in ordinary accident cases, the expense of settling or resolving such claims, and the ultimate liability of the defendants. Taking these considerations into account, we shall explain why we have concluded that the payment of damages to persons for the lost affection and society of a parent or child neither truly compensates for such loss nor justifies the social cost in attempting to do so." (*Id.*, at p. 444.)

In *Baxter* v. *Superior Court* (1977) 19 Cal.3d 461, 463 [138 Cal.Rptr. 315, 563 P.2d 871], the trial court sustained the demurrer to the parents' medical malpractice suit brought because of their child's injuries sustained as a result of the administration of a general anesthetic. The court concluded: "In California, however, the parent's cause of action has not expanded beyond the ancient right to recover for loss of earnings and services of economic value. For the policy reasons stated in *Borer,* in particular the intangible nature of the injury and the danger of multiplication of claims and liability, we decline to enlarge the parent's cause of action to permit recovery for the loss of affection and society."

Neither *Baxter* nor *Borer* is in point with the factual situation presented in this case. These decisions, nevertheless, indicate a public policy against awarding damages in loss of filial consortium situations except in the most narrow instances of providing a remedy for specific and measurable economic losses; but not in situations where the claim involves intangible injuries to a parent-child relationship.

The primary right appellant seeks to enforce is her right to visitation with her child and a claim that respondent damaged her filial relationship with her child by interfering with such visitations. Appellant, however, failed to avail herself of the opportunities for relief in the family law court and her damage action should not be allowed as an alternative remedy for such claimed violations of her rights of visitation.[4]

---

[4]We are not faced with the type of physical abduction of a child from the lawful custody of a parent as was alleged in *Rosenfeld* v. *Rosenfeld* (1963) 221 Cal.App.2d 431 [34 Cal.Rptr. 479], which of course would not be cognizable in a family law court and would be in violation of the penal statute of California. (Pen. Code, §§ 278 and 278.5.)

In our view, the judicial recognition of a cause of action for loss of filial consortium would undermine the purposes of the Family Law Act which is designed, among other things, to regulate and supervise the care, custody and financial support of minor children whose parents are the subject of dissolution proceedings. The recognition of this cause of action would create an unwarranted remedy of monetary damages and should be rejected.

A parent who has difficulties concerning the rights of visitation should be directed to the family law court for a speedy resolution of these disputes. Otherwise, disputes over visitations could be used as a vehicle for claiming monetary damages, a rather distasteful resolution of a problem which is supposed to involve primarily the best interests of the child, and not the parent.

The trial court properly sustained the demurrer to appellant's fourth cause of action.

DISPOSITION

The order appealed from is affirmed.

Klein, P. J., and Danielson, J., concurred.