2003 WY 167

**Shirley M. LARSEN and Polly M. Leyva, Appellants (Plaintiffs),**

v.

**BANNER HEALTH SYSTEM, an Arizona Corporation, formerly known as Lutheran Hospitals and Homes Society of America, Appellee (Defendant).**

No. 02–252.

Supreme Court of Wyoming.

Dec. 23, 2003.

Representing Appellants: John H. Robinson of Jamieson & Robinson, LLC, Casper, WY; and Timothy W. Miller of Reeves & Miller, Casper, WY. Argument by Messrs. Robinson and Miller.

Representing Appellee: Robert M. Shively and Amy M. Taheri, Casper, WY; and Jeffrey J. Campbell of Campbell, Yost, Hergenroether, Clare & Norell, P.C., Phoenix, AZ. Argument by Mr. Shively.

Before HILL, C.J., and GOLDEN, LEHMAN, and VOIGT, JJ., and PRICE, D.J.

LEHMAN, Justice.

[¶ 1]  This case comes before this court as a certified question from the United States District Court for the District of Wyoming. We are called upon to answer the question of whether Wyoming allows recovery of purely emotional damages in a negligence action brought by a mother and daughter who were separated because two babies were switched at birth. We answer the certified question in the affirmative.

### ISSUE

[¶ 2]  The issue presented by the certified question is:

> Whether a mother and daughter, who were separated for forty-three years because a hospital switched two newborn babies at birth, can maintain a negligence action in which the only alleged damages are great emotional pain, humiliation, anxiety, grief, and expenses for psychological counseling?

### FACTS

[¶ 3]  The certification order from the United States District Court sets forth a brief statement of facts relevant to the certified question. Those facts are as follows:

> At 3:07 a.m. on April 8, 1958, Jean Morgan gave birth to a baby girl, Debra, at Campbell County Memorial hospital. Shortly thereafter, Polly Leyva gave birth to a baby girl named Shirley. The hospital staff switched Shirley and Debra in those early morning hours when the respective mothers were unconscious. When the mothers regained consciousness, Debra went home with Polly Leyva and Shirley went home with Jean Morgan.

> The members of the hospital staff who switched the newborns and then failed to correct the mistake were acting within the scope of their employment for Banner Health System formerly known as Lutheran Hospitals and Homes Society of America. Banner Health Systems has staffed and operated Campbell County Memorial Hospital at all relevant times.

> Shirley "Morgan" grew up in the Morgan home, however, she did not look like the other Morgan children due to a darker skin coloration. Because Shirley had a darker complexion, James Morgan, the "father," openly and frequently asserted that Shirley was not his child. The complaint alleges that due to James' mistrust, Shirley was ostracized and "terribly mistreated" by James Morgan and the Morgan siblings.

> On April 3, 2001, a DNA test was performed to resolve the lingering doubts that James Morgan harbored about his wife's infidelity. The test established that James Morgan was not Shirley's father. A subsequent test performed on May 3, 2001, revealed that Jean Morgan was not Shirley's mother.

> After the results of the tests, Shirley began searching for her biological mother. She was able to determine that only two children were born at that hospital on that day. She subsequently contacted Debra with the shocking news. On October 4, 2001, Debra called Polly Leyva and informed her of the disturbing revelation. Shortly after this phone call, Shirley introduced herself to Polly as her biological daughter. Unfortunately, Shirley's real father died several years ago.

> Plaintiffs in this action are Shirley Larsen (f/k/a Shirley Morgan) and Polly Leyva. Plaintiffs have brought a negligence claim against the Defendant, Banner Health Systems, for switching the children at birth. However, the complaint only alleges damages for "great emotional pain, humiliation, anxiety, grief, and the ex-

penses for psychological counseling." On August 28, 2002, the defendant filed a motion to dismiss arguing that "[t]here is no cause of action recognized in Wyoming for mere negligence which results only in alleged emotional injury."

### STANDARD OF REVIEW

[¶ 4] We review the certified question pursuant to W.R.A.P. 11. Under this rule we are asked to settle questions of law in which it appears there is no controlling precedent from this court. W.R.A.P. 11.01.

### DISCUSSION

[¶ 5] This case requires us to examine the situations in which a plaintiff may make a claim for emotional damages. "Compensation for emotional distress is not a new concept in Wyoming." *Gates v. Richardson*, 719 P.2d 193, 194 (Wyo.1986). Yet, as this case demonstrates, difficulty arises in determining exactly when a plaintiff may make a claim for emotional damages. A brief review of our previous decisions on this subject shows that the circumstances in which we allow plaintiffs to make claims for emotional damages are limited.

[¶ 6] Traditionally recovery for mental or emotional injury was only allowed when such injury was linked to an actual or threatened physical impact. *Id.*, at 195 (citing W. Keeton, *Prosser and Keeton on Torts* § 54 at 362–64 (1984)). Recovery was generally not allowed in cases where negligent acts caused purely emotional harm and there was no impact or threat of impact. *Gates*, 719 P.2d at 195. The reasons for limiting emotional damages in such a manner have generally been identified as: 1) emotional disturbance which is not severe enough to have physical consequences is relatively harmless so the task of compensating for it would be unduly burdensome; 2) bodily harm provides a guarantee of genuineness without which emotional distress is too easily feigned; and 3) where a defendant's conduct is merely negligent the magnitude of his fault is not such that he should be required to compensate the plaintiff for a purely mental disturbance. *Payton v. Abbott Labs*, 386 Mass. 540, 437 N.E.2d 171, 178–79 (1982) (citing Restatement, Second, Torts § 436A, cmt. b).

[¶ 7] Many state courts have modified this traditional rule. These courts have recognized that in some instances other considerations subjugate the reasons for limiting emotional damages. Therefore, some courts have embraced the idea that a duty of care should extend to at least some plaintiffs who suffer purely mental injuries. *Gates*, 719 P.2d at 195 and n. 1 (collecting cases). In Wyoming we have modified the traditional rule and have allowed recovery for purely emotional injury. However, like most states, Wyoming has clearly restricted the instances in which recovery for emotional injury without accompanying physical injury will be allowed. *Blagrove v. JB Mechanical, Inc.*, 934 P.2d 1273, 1275 (Wyo.1997).

[¶ 8] Recovery for purely emotional distress is permitted in Wyoming in certain limited underlying actions. These actions are: "1) some intentional torts, *Waters v. Brand*, 497 P.2d 875, 877–878 (Wyo.1972) (false imprisonment); *Cates v. Eddy*, 669 P.2d 912, 921 (Wyo.1983) (malicious prosecution); 2) violation of certain constitutional rights, *Town of Upton v. Whisler*, 824 P.2d 545, 549 (Wyo.1992); and 3) breach of the covenant of good faith and fair dealing, *State Farm Mutual Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 833 (Wyo.1994)." *Blagrove*, 934 P.2d at 1275–76. We have also recognized the torts of intentional and negligent infliction of emotional distress, but we have done so only under limited circumstances. *Blagrove*, 934 P.2d at 1275; *Gates*, 719 P.2d at 195 (negligent infliction of emotional distress limited by the requirements of a family relationship and observation of serious bodily harm); *Leithead v. American Colloid Co.*, 721 P.2d 1059, 1066 (Wyo.1986) (intentional infliction of emotional distress limited by the requirements of extreme or outrageous conduct and severe emotional distress).

[¶ 9] This court has also considered the issue of purely emotional damages in a negligence action involving a car collision. In *Daily v. Bone*, 906 P.2d 1039 (Wyo.1995), Bone failed to stop the snowmobile he was driving at a stop sign. Bone's failure to stop caused a collision with Daily's vehicle. *Id.*, at

1042. Daily was not physically injured in the collision; Bone, however, was killed as a result of the impact. *Id.* Witnessing Bone's impact and death caused Daily posttraumatic stress disorder, depression, and agoraphobia. *Id.* We held that recovery in tort for injuries arising out of an automobile accident should not be denied simply because the plaintiff's injuries were mental rather than physical, as long as the plaintiff could prove negligence, impact, and damages proximately flowing therefrom. *Id.,* at 1044.

[¶ 10] Our holding in *Daily* convinced some that we had established a claim for negligence alleging only mental injury. In *Blagrove,* however, we explained that our decision in *Daily* "has the limited scope of allowing recovery for mental injury absent physical injury in an automobile collision case." *Blagrove,* 934 P.2d at 1276 (holding that as a general rule emotional distress damages in connection with property damage are not compensable). We went on to explain that *Daily* resulted from the particular facts of that case and "did not generally establish that a claim for negligence alleging only mental injury had been recognized in Wyoming." *Id.* However, we note that *Blagrove* was a case in which the defendant's negligence resulted in property damage; and we qualified the previous statement by also saying that *Daily* did not provide "an analysis which would extend its result to a property damage situation."

[¶ 11] Our most recent in-depth discussion of the availability of emotional distress damages in negligence actions is found in *Long–Russell v. Hampe,* 2002 WY 16, 39 P.3d 1015 (Wyo.2002). The plaintiff in *Hampe* claimed that her attorney was negligent when handling her divorce, which involved child custody issues. We were called upon to answer certified questions that required us to decide whether damages for emotional suffering could be awarded in a legal malpractice action where the basis for the claim was the attorney's negligence. We answered those questions in the negative. *Hampe,* ¶ 1.

[¶ 12] In reaching our decision in *Hampe* we set forth our case law regarding emotional damages as described above. *Hampe,* at

¶ 10. We then stated that we found the reasoning of the Minnesota Supreme Court consistent with our established law on the subject and adopted a Minnesota decision to govern in similar cases in Wyoming. *Hampe,* at ¶ 11 (adopting *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.,* 556 N.W.2d 557 (Minn.1996)). In *Lickteig,* also a legal malpractice case, the Minnesota Supreme Court held that emotional distress damages may be an element of damages in only three circumstances. First, the plaintiff may recover for the mental anguish accompanying a physical injury suffered as a result of another's negligence. Second, if the plaintiff as a result of another's negligence experiences emotional distress after actually being exposed to physical harm, he may recover for negligent infliction of emotional distress. Third, the plaintiff may recover where there has been a "direct invasion of the plaintiff's rights such as that constituting slander, libel, malicious prosecution, seduction, or other like willful, wanton, or malicious conduct." *Hampe,* ¶ 11 (quoting *State Farm Mut. Auto. Ins. Co. v. Village of Isle,* 265 Minn. 360, 122 N.W.2d 36, 41 (1963)).

[¶ 13] The Minnesota Supreme Court then stated, "as in other negligence actions, emotional distress damages are available in limited circumstances. There must be a direct violation of the plaintiff's rights by willful, wanton or malicious conduct; mere negligence is not sufficient." *Lickteig,* 556 N.W.2d at 562. Following the recitation of the excerpt from *Lickteig,* we went on to conclude that "based solely on an allegation of negligence, a litigant is not entitled to present an emotional damages claim to a jury." *Hampe,* at ¶ 11. Based on the certified question before us it appears that the plaintiffs similarly do not meet any of the three instances in which we allow recovery for emotional distress damages. They have not alleged physical injury, exposure to physical harm, or any "willful, wanton, or malicious conduct."

[¶ 14] Additionally, the parties in *Hampe* and *Lickteig* had an attorney client relationship. A similar type of relationship exists between a patient and her doctor and hospital. Both types of claims arise from a rela-

tionship based on breach of contract and breach of a fiduciary duty. *Hampe,* ¶¶ 8–9. *Hampe* similarly contained elements of damage that resulted from a disturbance in the parent-child relationship. Therefore, *Hampe* appears at first glance to be controlling.

[¶ 15] However, an important distinction must be made between *Hampe* and the instant case. Factoring into our decision in *Hampe* was our concern for the issues surrounding child custody. In *Hampe,* we cited to a Colorado case for its discussion of the child custody issues. We stated, "[w]ith specific regard to the claim relating to child custody, we view with favor the case *McGee v. Hyatt Legal Services, Inc.,* 813 P.2d 754, 758–59 (Colo.App.1990), for the additional guidance it provides." *Hampe,* ¶ 13. We noted that court's concerns about

> the impossibility of quantifying intangible injuries to the parent-child relationship, the effect recognition of damages would have on the district court's authority to regulate and supervise custody decisions which must turn on the best interests of the child, the certainty of some significant level of emotional disturbance in the dissolution of a marriage which includes a child custody component (especially one burdened with a high level of animosity), as well as the certainty that neither parent can reasonably expect full-time custody of the children because of the statutorily required liberal visitation with the non-custodial parent.

*Hampe,* ¶ 13. Therein lies the difference.

[¶ 16] In *McGee* the Colorado Supreme Court found that joint custody orders as opposed to sole custody orders do not constitute a compensable loss. *McGee,* 813 P.2d at 757–58 A close look at *McGee* reveals that the Colorado Supreme Court's reasons for denying recovery were not simply because the claim involved only intangible injuries which would be hard to quantify. The court also considered *In re Marriage of Segel* which recognized that such claims would circumvent and undermine the statutory scheme authorizing courts to regulate and supervise the custody of children whose parents are involved in dissolution proceedings. *Id.,* at 758 (citing *In re Marriage of Segel,*

179 Cal.App.3d 602, 224 Cal.Rptr. 591 (1986)). While we recognize that the nature of the injuries claimed in this case is similarly intangible, the concerns that a court's authority will be undermined is completely absent.

[¶ 17] Furthermore, divorce proceedings provide the parties with due process of law before the parent-child relationship is disrupted because each party is presented with notice and the opportunity to be heard by an independent third party. The final decision to disrupt the parent-child relationship rests with a judge charged with making such decisions in the best interests of the child. In the case now before us an independent third party did not review the merits of each party and then make an informed decision. The disruption in the parent-child relationship was allegedly due solely to defendant's negligence. Additionally, child custody orders are subject to modification in future proceedings. See Wyo. Stat. Ann. § 20–2–204 (LexisNexis 2003). Obviously we would never lightly dismiss or condone attorney negligence, but in a limited sense, some of the damage incurred due to attorney negligence in a case involving child custody may be mitigated by future modification.

[¶ 18] A last important distinction must be noted. As mentioned in *Hampe,* some level of emotional disturbance has to be expected in a divorce proceeding involving custody issues. *Hampe,* ¶ 13. The parties are aware of such a disturbance and can conceivably prepare to cope with the disturbance when they begin divorce proceedings. A parent leaving the hospital with a newborn child does not reasonably expect the same kind of disturbance. Additionally, in a divorce proceeding neither parent can reasonably expect, nor does he/she often get, full-time custody. The parent-child relationship is rarely completely severed in divorce proceedings. Each parent's relationship with the child, although altered, remains intact. The parent-child relationship in this case was completely severed.

[¶ 19] We, therefore, conclude that this case is not "similar" to *Hampe* and that *Hampe* did not speak directly to the issue now before us. We determine that the deci-

sions preceding *Hampe* as cited above did not squarely address the issue either. Having never addressed a case with circumstances such as this one, we looked to other jurisdictions for similar cases involving babies switched at birth and emotional damages. Our research turned up three cases. Although the cases discussed the issue, for various reasons they did not generally provide an analysis that was particularly useful to our specific discussion. *Wishard Memorial Hosp.v. Logwood,* 512 N.E.2d 1126 (Ind. App.1987) (The court denied recovery for purely emotional damages resulting from the switched babies. However, the switch was only for a number of hours and was discovered before either infant left the hospital.); *Twigg v. Hospital Dist. of Hardee County, Fla.,* 731 F.Supp. 469 (M.D.Fla.1990) (The court dismissed any claims "insofar as plaintiffs may be attempting to file a separate cause of action for psychic trauma alone." *Id.,* at 472. The court provided no further analysis on the subject, however, because plaintiffs asserted that they were not seeking compensation for psychic trauma alone but as damages appended to other claims, and those claims were allowed to go forward.); *De Leon Lopez v. Corporacion Insular de Seguros,* 931 F.2d 116 (1st Cir.1991) (The court allowed a grandfather to recover for his emotional damages resulting from one of his twin granddaughters being switched at birth. However, the defendant did not dispute that under Puerto Rico law the grandfather could bring an action for negligent infliction of emotional distress.).

[¶ 20] Appellants have argued for the application of an exception that would modify the restrictions placed on recovery for emotional damages without accompanying physical injury. We have previously shown that we are willing, in very limited circumstances, to overrule what was the common law at the time it was handed down but which has now become outdated. *Nulle v.*

*Gillette–Campbell County Joint Powers Fire Bd.,* 797 P.2d 1171, 1172–73 (Wyo.1990). However, like the Minnesota Supreme Court, we are not eager to expand the availability of damages for emotional distress. We continue to be concerned about the ramifications of expansion for the same reasons cited above. Nevertheless, our reluctance cannot result in the application of a rule that was not meant to govern this type of situation. Our primary concern is the burden overbroad liability for emotional damages would impose on our court system. See *Gates,* 719 P.2d at 197. Therefore, the availability of such damages must be limited to plaintiffs who can prove that emotional injury occurred under circumstances tending to guarantee its authenticity. *Lickteig,* 556 N.W.2d at 560.

[¶ 21] As mentioned previously, many jurisdictions have in at least some fashion modified the traditional rule requiring actual or threatened physical impact. However, most jurisdictions still require proof of a physical manifestation of emotional distress. *Boyles v. Kerr,* 855 S.W.2d 593, 598–99 (Tex.1993) (collecting cases). Several jurisdictions have recognized a general right to recover for negligently inflicted emotional distress. *Id.,* at 599.[1] Some jurisdictions allow recovery where the claimant establishes the breach of some independent duty. *Boyles,* at 598–99 (citing *Burgess v. Superior Court,* 2 Cal.4th 1064, 9 Cal.Rptr.2d 615, 831 P.2d 1197 (1992); *Corgan v. Muehling,* 143 Ill.2d 296, 158 Ill. Dec. 489, 574 N.E.2d 602 (1991); *Oswald v. LeGrand,* 453 N.W.2d 634 (Iowa 1990); *Clomon v. Monroe City Sch. Bd.,* 572 So.2d 571 (La.1990)). It is the independent duty exception to the general rule prohibiting recovery for strictly emotional damages that appellants urge us to apply.

[¶ 22] The Iowa Supreme Court has set forth a good description of this exception. "An exception exists 'where the nature of the

---

**1.** Citing the following cases, *Taylor v. Baptist Medical Center, Inc.,* 400 So.2d 369, 374 (Ala. 1981); *Montinieri v. Southern New England Telephone Co.,* 175 Conn. 337, 398 A.2d 1180, 1184 (1978); *Rodrigues v. State,* 52 Haw. 156, 472 P.2d 509, 519 (1970); *Gammon v. Osteopathic Hosp. of Maine, Inc.,* 534 A.2d 1282 (Me.1987); *Bass v. Nooney Co.,* 646 S.W.2d 765, 772 (Mo. 1983); *Johnson v. Supersave Markets, Inc.,* 211 Mont. 465, 686 P.2d 209, 213 (1984); *Johnson v. Ruark Obstetrics and Gynecology Assoc.,* 327 N.C. 283, 395 S.E.2d 85 (1990); *Schultz v. Barberton Glass Co.,* 4 Ohio St.3d 131, 447 N.E.2d 109, 113 (1983); *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672, 679 (1979).

relationship between the parties is such that there arises a duty to exercise ordinary care to avoid causing emotional harm.' " *Lawrence v. Grinde*, 534 N.W.2d 414, 421 (Iowa 1995) (quoting *Oswald v. LeGrand*, 453 N.W.2d at 639).[2] This exception is applied in circumstances involving contractual relationships for services that carry with them deeply emotional responses in the event of breach. *Lawrence*, at 421. Iowa has thus recognized the propriety of recovery of emotional distress in actions involving: 1) medical malpractice from negligent examination and treatment of a pregnant woman and her premature fetus; 2) a son when he saw the negligence of another cause injury to his mother; 3) negligent delivery of a telegram announcing the death of a loved one; and 4) negligent performance of a contract to provide funeral services. *Lawrence*, 534 N.W.2d at 421.

[¶ 23] Other courts have recognized similar exceptions and have allowed recovery for the negligent transmission of telegraph messages, especially those messages announcing death or indicating a potential for mental distress. *Clomon v. Monroe City Sch.Bd.*, 572 So.2d at 583 (citing *Graham v. Western Union Telegraph Co.*, 109 La. 1069, 34 So. 91 (1930); *Russ v. Western Union Telegraph Co.*, 222 N.C. 504, 23 S.E.2d 681 (1943); *Western Union Telegraph Co. v. Redding*, 100 Fla. 495, 129 So. 743 (1930)). Courts have also allowed similar recovery for the mishandling of corpses. *Id.* (citing *Fortuna v. St. Bernard Memorial Gardens, Inc.*, 529 So.2d 883 (La.App.1988); *Shelmire v. Linton*, 343 So.2d 301 (La.App.1977); *French v. Ochsner Clinic*, 200 So.2d 371 (La.App.1967); *Blanchard v. Brawley*, 75 So.2d 891 (La.App. 1954); *Clark v. Smith*, 494 S.W.2d 192 (Tex. Civ.App.1973); *Allen v. Jones*, 104 Cal. App.3d 207, 163 Cal.Rptr. 445 (1980); *Torres v. State*, 34 Misc.2d 488, 228 N.Y.S.2d 1005 (1962)).

[¶ 24] Oregon has recognized a similar exception but appears to have limited it to medical procedures. That state allows recovery "if the defendant care provider breached

'a specific duty to be aware of and guard against particular adverse psychological reactions or consequences to medical procedures.' " *Simons v. Beard*, 188 Or.App. 370, 72 P.3d 96, 102 (2003) (miscarriage) (quoting *Curtis v. MRI Imaging Servs. II*, 327 Or. 9, 956 P.2d 960 (1998) (administering MRI)).

[¶ 25] Alaska similarly recognizes a "preexisting duty exception" to the physical injury rule. *Kallstrom v. United States*, 43 P.3d 162, 166 (Alaska 2002). Under this exception a plaintiff may recover when the parties stand in a contractual or fiduciary relationship and the nature of this relationship imposes a duty that would foreseeably result in emotional harm to the plaintiff. *Chizmar v. Mackie*, 896 P.2d 196, 203 (Alaska 1995). The contract must generally be highly personal and laden with emotion. *Id.* The Alaska Supreme Court limits this rule by requiring that the emotional injury be serious or severe. *Id.*, at 205.

[¶ 26] We prefer Iowa's application of the independent duty exception because this expression is narrowly tailored and well reasoned. Under this exception recovery exists only in circumstances involving contractual services that carry with them deeply emotional responses in the event of breach. There must be a close nexus between the negligent action at issue and extremely emotional circumstances. *Lawrence*, 534 N.W.2d at 421. Whether this exception should be applied in Wyoming requires that we determine whether to extend a limited duty of care to those who suffer mental distress in the above-mentioned limited circumstances. In making this determination we seek to balance the view that a negligent act should have some end to its legal consequences against the view that the injured party has the right to recover for all harm caused. *Gates*, 719 P.2d at 196. Key policy factors to be considered are:

(1) the foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant's conduct and the

---

**2.** We note that we cited to the *Lawrence* case in *Hampe*, at ¶ 12. However, the purpose for which we cited to it was the general proposition cited by *Lawrence* that the majority view is that emo-

tional distress is not a reasonably foreseeable consequence of legal malpractice. See *Lawrence*, 534 N.W.2d at 422.

injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the consequences to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved.

*Gates,* 719 P.2d at 196 (citing *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 342 (1976)).

[¶ 27]  First, we consider the foreseeability of harm to the plaintiff. As noted in *Gates,* this is a vague test that essentially results in the court setting a legal duty and then outlining the policy principles that urge us to recognize such a duty. However, it is clear that the independent duty exception is based on the principle of foreseeability. The exception is only applicable when there is a previous relationship between the parties, and this relationship is based on services that carry with them deeply emotional responses in the event of breach. Under such circumstances both parties are aware of the emotional aspects attending their relationship and are likewise aware of the potential for emotional damage. We can easily conclude that it is foreseeable that when two babies are switched at birth the parties involved will experience emotional distress when the error is discovered. As the Iowa Supreme Court said: "[T]he birth of a child involves a matter of life and death evoking such 'mental concern and solicitude' that the breach of a contract incident thereto 'will inevitably result in mental anguish, pain and suffering.'" *Oswald,* 453 N.W.2d at 639; see also *Geibel v. United States,* 667 F.Supp. 215, 220 (W.D.Pa.1987); *Taylor v. Baptist Medical Center, Inc.,* 400 S.2d 369, 374 (Ala.1981). We have characterized the parent-child relationship as one of the "earliest and most hallowed of the ties that bind humanity." *Matter of Adoption of Voss,* 550 P.2d 481, 485 (Wyo.1976).

[¶ 28]  Second, we consider the closeness between the defendant's conduct and the injury suffered. In instances where the independent duty exception is applied there is a closeness between the defendant's conduct and the injury because the exception is limited to instances where the parties had some sort of relationship. The very nature of the exception requires that the defendant's conduct be sufficiently close to the injury suffered. In such cases, there is a direct link between the injured party and the defendant. Although the holding in *Daily* was limited to automobile collisions, in that decision we recognized that a difference exists between a claim asserted by a "bystander" and a claim asserted by a direct victim of a traditional completed tort. *Daily,* 906 P.2d at 1045. The degree of closeness between the defendant's conduct and the injury suffered is one such distinction. Cases involving babies that have been switched at the hospital present the direct victims of a tort. The concerns related to the closeness of "bystanders" are thus not present. Recovery in such instances would be predicated upon a traditional, completed tort.

[¶ 29]  Third, we must be concerned with whether there is some certainty that the plaintiff suffered an injury. This element relates to the concern noted by the *Lickteig* court that the injury must occur under circumstances tending to guarantee its genuineness. *Lickteig,* 556 N.W.2d at 560. The limited nature of the independent duty exception alleviates some of this concern as it applies only when the relationship carries deeply emotional responses in the event of breach. In fact, the one thing common to the limited circumstances in which the exception is applied is that the circumstances present a great likelihood of genuine mental distress. *Clomon v. Monroe City Sch.Bd.,* 572 So.2d at 583. In this particular case, a mother and daughter learned after forty-three years that they had been separated because two babies had been switched at birth. Little doubt remains that the parties involved in such an occurrence will suffer emotional distress. Indeed, the parties have lost the affection and close companionship that attends the parent-child relationship. The parties have bonded with other persons and recognized those persons as their own family only to shockingly discover that they are not related by blood, as they had once believed.

[¶ 30] Fourth, we consider the moral blame attached to the defendant's conduct. This factor is used to determine whether the defendant is morally culpable before imposing liability. Moral blame generally results from situations in which the defendant had direct control over establishing and ensuring proper procedures to avoid the harm caused or where the defendant is the party best in the position to prevent the injury. See generally *Duncan v. Afton, Inc.*, 991 P.2d 739, 745 (Wyo.1999). Traditionally, the reason for denying recovery for purely mental disturbances relied upon the judgment that a defendant who is merely negligent is not so blameworthy that he should be required to compensate for mental disturbances. However, we think moral blame does attach to the defendant's conduct when babies are switched at the hospital. The hospital has sole control over the babies and its identification procedures, and it is the hospital that is in the best position to prevent such an injury. We, therefore, think that moral blame must attach to such conduct.

[¶ 31] The fifth and sixth factors, the policy in preventing future harm and the burden on the defendant in this instance, can be discussed together. We find it imperative that hospitals have procedures to ensure that newborn children are given to the proper parent. The need to prevent future harm is completely obvious and an extended discussion is unnecessary. Furthermore, the burden placed upon the defendant to avoid such harm in the future would not be so great. Procedures for the identification and safety of newborn babies are available and can easily be used.

[¶ 32] Seventh, we must determine the consequence to the community and the court system. This factor has generally been thought of as weighing the negative aspects of creating a new cause of action. As noted previously, we are concerned that additional liability may impose a great burden on our court system. However, we think the independent duty exception, as described by the Iowa Supreme Court, is sufficiently limited in scope so as to avoid an overwhelming burden. As noted in *Gates*, we suspect that recovery will not occur often because of the limitations placed on the action. *Gates*, 719 P.2d at 198. The instances in which this exception is available are initially limited by the exception itself because there must be a relationship for services that carries with it deeply emotional responses in the event of a breach. *Lawrence*, 534 N.W.2d at 421.

[¶ 33] An additional limitation on the independent duty exception as recognized by Iowa is the requirement that the distress inflicted be "so severe that no reasonable man could be expected to endure it." *Lawrence*, 534 N.W.2d at 421 (citing Restatement, Second, Torts). This same limitation exists on intentional infliction of emotional distress (IIED) as recognized in Wyoming, which comes from Restatement, Second, Torts § 46. *Leithead*, 721 P.2d at 1065; see also *Kanzler v. Renner*, 937 P.2d 1337, 1341 (Wyo.1997). Claims of IIED are made when "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Leithead*, at 1065 (quoting Restatement, *supra*, § 46(1)). Outrageous conduct is defined as conduct which goes " 'beyond all possible bounds of decency' and which is 'regarded as atrocious, and utterly intolerable in a civilized community.' " *Kanzler*, at 1341 (quoting Restatement, § 46 cmt d). Nevertheless, IIED is additionally limited by the requirement of severe emotional distress. The reason given for this limitation is "[c]omplete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people." *Leithead*, 721 P.2d at 1067 (quoting Restatement, *supra*, cmt j.) Therefore, the law only intervenes where the distress inflicted is "so severe that no reasonable man could be expected to endure it." *Id.*

[¶ 34] The independent duty exception requires only negligence, not that the defendant intentionally or recklessly caused the emotional harm. The additional requirement that the defendant's conduct be extreme and outrageous is similarly absent. While the independent duty exception is applicable when a contractual relationship that carries with it deeply emotional responses in the event of breach exists and breaching the contract therefore seems to carry some ele-

ment of outrageousness, it is to a lesser degree. It is thus entirely appropriate and perhaps more essential that the same limitation of severity apply when recognizing the independent duty exception.

[¶ 35] The recognized court and jury functions for the question of severity are likewise applicable. "It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Kanzler*, at 1341 (quoting Restatement, *supra*, cmt. j). The intensity and the duration of the distress are factors to be considered in determining its severity. *Leithead*, at 1067 (quoting cmt j). Thus, the determination will have to be made that the emotional injury is severe on a case by case basis.

[¶ 36] Under this seventh factor, we additionally recognize that the parent-child relationship is intangible and it will likely be hard to value. However, such a valuation would be no harder than valuing the loss of society, care, and attention in a wrongful death action.[3] "Recovery of damages for mental injury is not novel to Wyoming jurisprudence." *Daily*, 906 P.2d at 1044. Similarly intangible and inherently difficult to measure are pain and suffering damages, but they are sought and awarded in nearly all tort actions. We also acknowledge that tort damages are compensatory in nature and seek to put the plaintiff in the same position he would have been in but for the defendant's negligence. While a monetary award will not restore intangible relationships, it is currently the best solution our system offers. *Hancey v. United States*, 967 F.Supp. 443, 445 (D.Colo.1997). We also recognize that legal consequences from wrongs must be limited to some controllable degree, but we trust the jury to assess reasonable damages. The courts can control juries that are ruled by passion or prejudice. *Gates*, 719 P.2d at 200; see also *Caterpillar Tractor Co. v. Donahue*, 674 P.2d 1276, 1289 (Wyo.1983) (the court has duty to grant remitter or additur where a verdict shocks the conscience of the court);

*Booth v. Hackney*, 516 P.2d 180, 181 (Wyo. 1973) (verdict can be set aside when it appears to be so excessive that it denotes passion, prejudice, bias or some erroneous basis).

[¶ 37] The procedures by which courts can control juries combined with the limited nature of the exception and the requirement of severe emotional distress convinces us that the negative aspects of recognizing the independent duty exception are reasonably limited. Therefore, under the seventh factor we determine that our courts will not be unduly burdened by this exception to the general rules limiting emotional damages.

[¶ 38] The eighth and final factor is the availability, cost, and prevalence of insurance for the risk involved. Aside from the current issues surrounding the cost of medical malpractice insurance, we note that insurance is quite prevalent. Hospitals are insured for all types of losses related to the birth of a child. Although we have said this previously, because of the current issues surrounding medical malpractice insurance it bears repeating: this exception is extremely limited. The exception only applies when there is a contract for services that carries deeply emotional responses in the event of breach. Although some level of emotion attends every situation involving one's health, we do not anticipate that every area of healthcare will carry the deeply emotional responses sufficient to sustain this exception.

[¶ 39] After applying the balancing of factors test "it is difficult for the court, on the basis of natural justice, to reach the conclusion that this type of action will not lie. Human tendencies and sympathies suggest otherwise." *Nulle*, 797 P.2d at 1174 (quoting *Hoffman v. Dautel*, 189 Kan. 165, 368 P.2d 57, 59 (1962)). Accordingly, we hold that in Wyoming, in the limited circumstances where a contractual relationship exists for services that carry with them deeply emotional responses in the event of breach, there arises a duty to exercise ordinary care to avoid causing emotional harm. However, as can be seen by our discussion, this exception is ex-

---

**3.** We seek to clarify that this statement is in no way intended to indicate a retreat from the holding that mental suffering is not a compensable damage under the wrongful death statute. See *Knowles v. Corkill*, 2002 WY 119, 51 P.3d 859 (Wyo.2002).

tremely limited. We persist in seeking to assure that our already burdened court system will not be additionally burdened by an overly broad liability for emotional damages.

### CONCLUSION

[¶ 40] For the reasons fully explained above we answer the certified question in the affirmative. A mother and daughter, who were separated for forty-three years because the hospital switched two newborn babies at birth, can maintain a negligence action in which the only alleged damages are great emotional pain, humiliation, anxiety, grief, and expenses for psychological counseling.

PRICE, District Judge, dissenting.

[¶ 41] I respectfully dissent.

[¶ 42] The majority again expands the traditional rule disallowing recovery for mental or emotional injury only when such injury is linked to an actual or threatened physical impact. Although the majority says one thing, it clearly does the other. It claims, "we are not eager to expand the availability of damages for emotional distress." ¶ 20. Claiming that, "[t]herefore, the availability of such damages must be limited to plaintiffs who can prove that emotional injury occurred under circumstances tending to guarantee its authenticity," it cites *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.,* 556 N.W.2d 557 (Minn.1996). *Id.* An examination of this case reveals that the Minnesota court limited this kind of recovery. "There must be a direct violation of the plaintiff's rights by willful, wanton or malicious conduct; mere negligence is not sufficient." *Lickteig,* at 562.

[¶ 43] By adopting the Iowa independent duty exception, the majority fails in its effort and stated concern: "Our primary concern is the burden overbroad liability for emotional damages would impose on our court system." ¶ 20. The majority then states:

> The recognized court and jury functions for the question of severity are likewise applicable. "It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evi-

dence, it has in fact existed." *Kanzler,* at 1341 (quoting Restatement, *supra,* cmt. j). The intensity and the duration of the distress are factors to be considered in determining its severity. *Leithead,* at 1067 (quoting cmt j). [¶ 35.]

[¶ 44] This certainly opens the door for a number of cases to be considered by the trial courts. As one commentator has stated:

> It is difficult to imagine how a set of rules could be developed and applied on a case-by-case basis to distinguish severe from nonsevere emotional harm. Severity is not an either/or proposition; it is rather a matter of degree. Thus, any attempt to formulate a general rule would almost inevitably result in a threshold requirement of severity so high that only a handful would meet it, or so low that it would be an ineffective screen. A middle-ground rule would be doomed, for it would call upon courts to distinguish between large numbers of cases factually too similar to warrant different treatment. Such a rule would, of course, be arbitrary in its application.

Richard N. Pearson, *Liability to Bystanders for Negligently Inflicted Emotional Harm— A Comment on the Nature of Arbitrary Rules,* 34 U.Fla.L.Rev. 477, 511 (1982), cited in *Boyles v. Kerr,* 855 S.W.2d 593, 600 (Tex. 1993).

[¶ 45] It is the expansion of this holding to many medical malpractice cases that concerns me. In the current times of medical malpractice issues, insurance and possible resulting loss of doctors in Wyoming, I predict this case will add fuel to the fire. After all, legal malpractice does not give rise to a claim for emotional distress but medical malpractice will. *Long–Russell v. Hampe,* 2002 WY 16, 39 P.3d 1015 (Wyo.2002). Even though the majority tries to limit this expansion, I predict it will not:

> Accordingly, we hold that in Wyoming, in the limited circumstances where a contractual relationship exists for services that carry with them deeply emotional responses in the event of breach, there arises a duty to exercise ordinary care to avoid causing emotional harm. However, as can be seen by our discussion, this exception is

extremely limited. We persist in seeking to assure that our already burdened court system will not be additionally burdened by an overly broad liability for emotional damages. [¶ 39.]

[¶ 46] As I see it differently, I dissent and would answer the certified question in the negative.